**Dorsey VENTROY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–95–00372–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 21, 1996.

Stephanie L. Stevens, San Antonio, for appellant.

Angela Moore, Assistant Criminal District Attorney, San Antonio, for appellee.

Before CHAPA, C.J., and HARDBERGER and GREEN, JJ.

OPINION

GREEN, Justice.

The State indicted Dorsey Ventroy for the offense of attempted murder, enhanced as a repeat offender. Pursuant to a not guilty plea, a jury found Ventroy guilty and also found that he had used a deadly weapon in the commission of the offense. The trial court, based on the jury verdict, found the enhancement allegation "true," and sentenced Ventroy to life in prison. Ventroy's seven points of error fall into three general categories: (1) the trial court made erroneous evidentiary rulings; (2) the trial court improperly instructed the jury; and (3) the prosecutor made improper arguments to the jury. We affirm.

The complainant and Ventroy, her boyfriend, drove around talking in Ventroy's car. The couple stopped at a bar, and using money given her by Ventroy, the complainant purchased crack cocaine. The pair continued driving and talking; an argument ensued and the complainant exited the car. Ventroy chased her, striking the complainant with his car. The complainant escaped, and Ventroy struck the complainant with the car a second time. The complainant was dragged by the vehicle, incurring brutal wounds including a fractured pelvis, severely torn and abraded skin, a collapsed lung, and broken ribs.

### Evidentiary Rulings

■ *Expert Testimony*—In point of error number one, Ventroy asserts that the trial court improperly permitted a police officer to testify as an expert without the officer possessing the necessary expert credentials. Specifically, Ventroy complains that Officer Thompson was not qualified to offer an expert opinion about the point of impact, the car's direction of travel, and other opinions about the scene.

■ "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." TEX. R.CRIM.EVID. 702. The admissibility of evi-

dence, generally, and the qualification of a witness as an expert is within the discretion of the trial judge. TEX.R.CRIM.EVID. 104(a); *Trevino v. State*, 783 S.W.2d 731, 733 (Tex. App.—San Antonio 1989, no pet.) (citing *Holloway v. State*, 613 S.W.2d 497, 501 (Tex. Crim.App.1981). The trial court's decision to qualify a witness as an expert will not be disturbed absent a showing of abuse of discretion. *Negrini v. State*, 853 S.W.2d 128, 130–131 (Tex.App.—Corpus Christi 1993, no pet.). Challenges to the expert's testimony go to the weight of the testimony and not its admissibility. HULEN D. WENDORF ET AL., TEXAS RULES OF EVIDENCE MANUAL, at VII–21 to –22 (3d ed. 1994).

■ Ventroy properly notes that "[s]pecial knowledge of the specific matter on which the expert is to testify must be shown." But, what Ventroy fails to say is that "special knowledge" may be acquired by virtue of the witness's experience. *Reece v. State*, 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.); *Perryman v. State*, 798 S.W.2d 326, 329 (Tex.App.—Dallas 1990, no pet.); *Trevino v. State*, 783 S.W.2d at 733. Officer Thompson opined that he had investigated two to four automobile accidents per week during his twenty year law enforcement career. Additionally, on voir dire, the officer testified that in addition to his initial training in accident investigation as a police cadet, he received annual refresher training pertaining to accident investigation.

In response to prosecution questions, the officer testified, presumably based on finding "flesh embedded in the pavement," blood on the street, and the location of the injured party when he arrived on the scene, that, "I could tell the way of travel." Additionally the officer testified:

A: ... the gentleman or whoever was driving the car, stopped the vehicle, evidently he tried to get this lady out or got the lady from under the car or she fell from under the car. But you could see where he backed up through the blood, stopped. Evidently she fell out there or he grabbed her or pulled

her out. I don't know. But you could see where he went back through the blood and fled the scene.

As is evident from the foregoing, Officer Thompson's testimony was not of technical nature, but rather was his opinion based on impressions and conclusions derived from what he saw at the scene and his years of experience investigating accidents.

■ " '[A] witness may qualify to give testimony both under Rule 702 because of his superior experiential capacity and under Rule 701 if his testimony and opinion are based on first hand knowledge.[1]' " *Yohey v. State*, 801 S.W.2d 232, 243 (Tex.App.—San Antonio 1990, pet. ref'd) (John F. Onion, Jr., J.) (quoting HULEN D. WENDORF & DAVID A. SCHLUETER, TEXAS RULES OF EVIDENCE MANUAL, art. VII at 265 (2d ed. 1988), *now*, at VII–21 (3d ed. 1994)). The officer in *Yohey* was permitted to testify to the relative time of death of the victims despite the fact that the officer had no formal medical training. *Yohey v. State*, 801 S.W.2d at 243 (experience was acquired during course of numerous homicide investigations). Like the officer in *Yohey*, the testimony and opinion offered by Officer Thompson was based on his personal knowledge and his experience from many previous accident investigations. Nothing in the foregoing would suggest the trial court abused its discretion in permitting Officer Thompson to express his opinion regarding circumstances surrounding the accident. We conclude that the testimony offered by Officer Thompson was admissible under both Rule 701, as lay opinion, and under Rule 702, as expert testimony. TEX.R.CRIM.EVID. 701, 702. Ventroy's first point of error is overruled.

■ *Rule 403*—Ventroy complains in his second point of error that the highly prejudicial nature of the photographs showing the complainant's wounds substantially outweighed the probative value of admitting them into evidence. TEX.R.CRIM.EVID. 403. The appellant argues that admission of the pictures added nothing to the testimony de-

---

1. Rule 701 permits a non-expert witness to offer opinions and inferences, "which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." TEX. R.CRIM.EVID. 701.

tailing the complainant's injuries, and, therefore, the cumulative nature of the evidence gleaned from the pictures reduces their probative value.

 In determining admissibility of photographic evidence, among the factors to be considered are the detail, size, number, and gruesomeness of the photos, whether the photos are in color or black-and-white, whether the photos are enlarged, whether the pictures are close-ups, and whether the body is clothed or nude and the availability of other means of proof and circumstances unique to each case. *Hicks v. State,* 860 S.W.2d 419, 426 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994). This Court will not reverse the trial court's decision unless it is outside the zone of reasonable disagreement—an abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990).

 After reviewing the foregoing factors, we do not find that admission of the photos was unfairly prejudicial. Gruesomeness by itself does not make a picture more prejudicial than probative. *Hicks v. State,* 860 S.W.2d at 426. The challenged photos, although gruesome, are admissible to show the perpetrator's state of mind and the violent nature of the crime and, therefore, are not necessarily "needlessly" cumulative. *See Shavers v. State,* 881 S.W.2d 67, 77 (Tex. App.—Dallas 1994, no pet.); *cf. Hicks v. State,* 860 S.W.2d at 426–27; Hulen D. Wendorf et al., Texas Rules of Evidence Manual, at IV–28 to –29 (3d ed. 1994) (noting that certain amount of redundancy is to be expected during the course of trial). Because we do not believe the trial court abused its discretion, point of error number two is overruled.

### Jury Instructions

 *Nature of the Conduct Offense versus Result Offense*—Points of error three and four complain the trial court failed to properly instruct the jury that aggravated assault and attempted murder are result-type offenses. Ventroy insists that the instructions on the culpable mental states for the two offenses as submitted to the jury would permit a guilty verdict based on an improper reason—his conduct—rather than a proper one—the result of his conduct. Ventroy concedes that both instructions were given without objection.

 In *Cook v. State,* the Court of Criminal Appeals clearly stated that it is error to not limit the definition of culpable mental states in result-type offenses to the result of the accused's action, to the exclusion of the conduct itself. *Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim.App.1994). Finding error, however, only begins our inquiry. *Id.* The definitions in the charge must be examined in the context in which they appear, and are not to be read selectively. *Turner v. State,* 805 S.W.2d 423, 430 (Tex. Crim.App.), *cert. denied,* 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). Further, *Cook* mandated a review of the evidence and the record as a whole to determine if there is actual, rather than simply theoretical harm. *Cook v. State,* 884 S.W.2d at 491–92. When, as here, jury charge error is not the subject of a proper objection, the appellant has the burden to demonstrate egregious harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984).

Ventroy argues that this case is very similar to *Sneed v. State,* 803 S.W.2d 833 (Tex. App.—Dallas 1991, pet. ref'd). The court overturned Sneed's conviction, finding the defendant had suffered egregious harm because the jury charge definition of the culpable mental states erroneously included reference to nature of the conduct, instead of being limited exclusively to the result of the conduct. *Sneed v. State,* 803 S.W.2d at 835–37. However, *Sneed* is clearly distinguishable from the case at hand. There, the Dallas court found egregious harm because the prosecution compounded the faulty jury instruction by dwelling, in both *voir dire* and in closing argument, on the conduct aspect of the charge rather than the result of the conduct. *Id.* In the instant case that did not occur. The State did not mention, or even allude to, "engaging in the conduct" as a permissible reason for a guilty verdict, much less dwell on it. Further, references by the prosecution to this portion of the charge,

which were minimal, referred to "attempt[ing] to cause the death of [the complainant]" or similar language addressing only the result.

It should be noted that Ventroy's reliance on *Banks v. State,* 819 S.W.2d 676 (Tex. App.—San Antonio 1991, pet ref'd), out of this Court is misplaced. In *Banks,* the application paragraph did not restrict the culpable mental states to intending or knowing the result as is correct. *Id.* at 680. Unlike *Banks,* in the instant case, the portion of the charge which applies the law to the facts properly limits the circumstance under which the jury could return a guilty verdict. Reading the entire charge, the jury members could not find Ventroy guilty unless they believed beyond a reasonable doubt that Ventroy, either attempted to *cause* the complainant's death, or *caused* serious bodily injury to the complainant.[2] Based on the facts before us, not only is there no showing of egregious harm, there is no harm, theoretical or actual. Points of error three and four are overruled.

■ *Guilt/Innocence Instruction*—Point of error seven alleges the trial court erred by instructing the jury in response to a question that the jury's sole duty was to determine guilt or innocence. Ventroy's contends that the judge's instruction vitiated the presumption of innocence by suggesting that there must be some proof of innocence.

During deliberations, the jury sent a question to the court requesting information regarding punishment ranges for the two crimes on which they had been instructed. Without objection, the judge instructed the jury to "restrict [their] deliberations to the issue of guilt or innocence of the defendant."

The charge of the court states in part that, "all persons are presumed innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.... The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt...." Additionally, the charge places the burden of proof squarely on the prosecution and mandates acquittal if each and every element is not proved beyond a reasonable doubt.

Reading the charge as a whole, the jury could not believe, from the complained of instruction, that Ventroy had some obligation to prove his innocence. Further, Ventroy makes no attempt to sustain his burden to show egregious harm, other than to make the perfunctory claim that he was denied a fair trial. Finding no harm, we overrule point of error seven.

### Improper Jury Argument

■ Ventroy complains in points of error five and six that the prosecution misinformed the jury of the law and improperly suggested that defense counsel attempted to mislead the jury. Ventroy concedes that he did not object to the prosecutor's jury argument, but argues that the improper jury argument is so "egregiously harmful" to Ventroy as to constitute reversible error.

Ventroy claims it was improper for the State to argue that Ventroy's counsel was seeking to lead the jury down "rabbit trails" offered by the defense counsel and to tell the jury:

> Don't take the rabbit trails. It's against the law for you to consider what kind of evidence you ought to hear or you didn't hear. It's against the law. You're breaking the law unless you just consider the evidence that you did hear.

Ventroy insists this is an effort by the State to prevent the jury from considering whether the State has proved its case beyond a reasonable doubt. Conversely, the State asserts that this argument is a proper response to the defensive argument pointing out the shortcomings and lack of follow-up in the police investigation of the incident and the State's alleged failure to present testimony from any police homicide investigator.

---

**2.** The pertinent portions of the charge read: "if you find beyond a reasonable doubt that ... Dorsey Ventroy, did intentionally or knowingly attempt to cause the death of [the complainant]...." and "did intentionally and knowingly cause serious bodily injury...."

Notwithstanding the competing arguments, failure to object to improper jury argument waives the error unless the argument was so prejudicial that a prompt instruction to disregard would not cure the error. *Motley v. State*, 773 S.W.2d 283, 293 (Tex.Crim.App.1989). Incurable argument, and hence, reversible error, only occurs if the argument is "extreme, manifestly improper, injects new and harmful facts into [sic] case or violates a mandatory statutory provision and is thus so inflammatory that its prejudicial effect cannot reasonably be cured by judicial instruction to disregard [sic] argument." *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992).

We disagree with Ventroy's characterization of the State's argument as informing the jury they could not consider the "lack of evidence" during deliberations. Taken in context, the arguments made by the prosecution answered defensive theories and attempted to focus the attention of the jury on the evidence presented, discouraging speculation about evidence not offered. *See Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex. Crim.App.1973) (permissible areas of jury argument by the prosecution are (1) a summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and (4) a plea for law enforcement). Further, we do not believe that the State's warning to the jury to avoid possible "rabbit trails" was so extreme, manifestly improper, or prejudicial as to constitute reversible error. Therefore, points of error five and six are overruled.

Accordingly, the judgment of the trial court is affirmed.