

## NUMBER 13-08-00653-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**DOUGLAS SANDER,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the County Court at Law No. 2
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

Appellant, Douglas Sander, was charged by information with driving while intoxicated based on his involvement in a motor vehicle accident. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). Sander pleaded not guilty to the charges. A jury found Sander guilty of the offense, and the trial court assessed punishment at 180 days' confinement in a Nueces County Jail and imposed a $1,000 fine. The trial court's sentence

was suspended and Sander was placed on community supervision for one year. By two issues, Sander contends that the trial court committed reversible error by admitting: (1) hearsay statements of the driver of the other car involved in the accident; and (2) the results of a blood test taken at the local hospital. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 28, 2007, at approximately 11:30 p.m., Officer Victor Casares of the Corpus Christi Police Department was dispatched to a minor two-car accident in Corpus Christi, Texas. Upon arrival, Officer Casares found two wrecked vehicles in the roadway. Officer Casares spoke to Sander and the driver of the other car involved in the accident to discover what had happened. At trial, Officer Casares testified, over objection, that the driver of the other car told him that she was driving eastbound on Lipes Boulevard and that, when she attempted to make a left-turn on Spanishwood, Sander attempted to "overtake her and struck her vehicle." While speaking to Sander at the scene, Officer Casares noticed that Sander smelled of alcohol and immediately requested backup.

Officers Anthony Sanders and Armando Vasquez arrived at the scene shortly thereafter. Officer Vasquez performed three field sobriety tests on Sander to determine if he was intoxicated. Officer Vasquez noticed that Sander: (1) had trouble standing; (2) slurred his speech; and (3) had glossy eyes. Sander admitted that he was the driver of one of the vehicles involved in the accident and that he had drunk alcohol before the accident. Based on the observations made by Officers Vasquez and Casares and on Sander's poor performance on the field sobriety tests, it was determined that Sander was intoxicated, and he was subsequently arrested.

Because Sander was involved in an automobile accident, Officer Vasquez took

2

Sander to Bay Area Hospital to be checked for injuries. While at the hospital, Officer Vasquez requested that Sander provide law enforcement with a blood sample to accurately determine whether he was intoxicated. Officer Vasquez then read Sander various warnings and instructions pertaining to the collection of the blood sample; Sander agreed to provide the blood sample.[1]

Gerald Schroepfer, a registered nurse at the Bay Area Hospital, took Sander's blood sample. Officers Sanders and Raymond Harrison were both present during the collection of Sander's blood sample. Officer Sanders signed a document indicating that he was a witness to the blood draw. Schroepfer testified that he made notations on the vial of blood and that the vial was dated December 28, 2007, at 12:39 a.m. Schroepfer further testified that, once the blood was collected, he wrapped up the container and handed it over to law enforcement.

Efrain Perez, a forensic scientist with the Texas Department of Public Safety Crime Laboratory ("TDPS Crime Lab"), testified that the vial of blood was received on January 4, 2008. Perez noted that, upon receipt of blood samples, technicians are trained to immediately place the vials in the refrigerator at a specified temperature in the locked evidence vault. Perez analyzed the blood sample on January 10, 2008, and based on his analysis, Sander had a blood alcohol concentration of 0.22 grams of alcohol per 100 millimeters of blood on the evening of the accident, which was over the legal limit. Perez further testified that it appeared that Sander's blood sample had been treated with anticoagulants—potassium oxalate and sodium fluoride—to prevent coagulation and degradation of the sample from occurring.

---

[1] Sander signed a consent form authorizing law enforcement to collect the blood sample.

3

On January 28, 2008, Sander was charged by information with driving while intoxicated, a class B misdemeanor, and was subsequently convicted of the offense. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). Sander's right to appeal was certified by the trial court on October 15, 2008. This appeal ensued.

## II. STANDARD OF REVIEW

Both of Sander's issues pertain to the trial court's admission of certain evidence. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007). A trial court's decision will be upheld unless it lies outside the "zone of reasonable disagreement." *Id.*

## III. ANALYSIS

### A. Hearsay Statements

In his first issue, Sander asserts that the trial court committed reversible error by admitting hearsay statements made by Officer Casares at trial. Specifically, Sander complains about Officer Casares's recounting of the statements of the other driver involved in the accident regarding the details of the accident and, in particular, the other driver's assertion that Sander had been driving the car that had hit her. The State counters by arguing that Sander made a premature objection, which did not preserve error and that, even if error had been preserved, such error would have been harmless.

### 1. Preservation of Error

The following exchange is the basis for Sander's complaint:

Q: [State's counsel]   Did you also speak with the other driver that night?

A: [Officer Casares]   Yes.

Q:   And what happened with her?

4

A:                             She gave me her side of the story?

Q:                             And can you tell the jury in your opinion as to your investigation what happened?

     [Counsel for Sander]:      Well, once again, I'm going to object. He's saying he talked to both sides. So anything that he says now would be hearsay from those people.

     THE COURT:            Your objection's overruled. You may answer, sir.

A:                             The driver, number two, the female, said she was driving eastbound on Lipes and she was going to make a left on the street, I think it was Spanishwood. I'd have to review my report to be exact. And she said the number one driver, which is the defendant, tried to overtake her and struck her vehicle.

Sander contends that this exchange resulted in the admission of inadmissible hearsay testimony. He further urges that this testimony was the only evidence that the State provided to corroborate earlier testimony pertaining to Sander's admission that he was the driver of one of the vehicles involved. *See Coleman v. State*, 704 S.W.2d 511, 512 (Tex. App.–Houston [1st Dist.] 1986, pet. ref'd) ("[T]he corpus delicti of drunken driving consists of the fact that someone operated a motor vehicle in a public place while intoxicated. The accused's confession cannot, itself, establish such fact."). As a result, Sander argues that Officer Casares's testimony about what the other driver told him was inadmissible hearsay testimony, and because the State failed to corroborate Sander's admission that he was the driver, the State failed to prove that Sander was the driver of the vehicle.

The State argues that the question immediately preceding Sander's objection did not

call for inadmissible hearsay. It further argues that the question was merely designed to elicit Officer Casares's opinion about what had happened that evening. Because the question was not designed to elicit inadmissible hearsay, the State asserts that Sander's objection was premature and, therefore, did not preserve error. We agree.

To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. *Trevino v. State*, 174 S.W.3d 925, 927 (Tex. App.–Corpus Christi 2005, pet. ref'd) (citing TEX. R. APP. P. 33.1(a); *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (en banc)). "All a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* (quoting *Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005)).

The State's question to Officer Casares about his opinion regarding the investigation was not designed to elicit hearsay testimony; it was designed to allow Officer Casares to comment on his investigation and how Sander became a suspect. *See Osbourn v. State*, 92 S.W.3d 531, 536-37 (Tex. Crim. App. 2002) (noting that the testimony of a police officer based on his experience is admissible as a lay opinion); *Ventroy v. State*, 917 S.W.2d 419, 422 (Tex. App.–San Antonio 1996, pet. ref'd) (stating that a police officer can testify as both a lay and expert witness based on personal knowledge and experience from many previous accident investigations); *see also Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.–Dallas 2000, no pet.) ("Police officers may testify to explain how the investigation began and how the defendant became a suspect."). Because the State's question of Officer Casares was not designed to elicit

6

hearsay testimony, we conclude that Sander's objection was premature.

We are mindful that after the trial court overruled Sander's objection, Officer Casares went on to testify as to the statements made to him by the other driver.[2] However, Sander neither re-asserted his objection during or after Officer Casares's testimony as to the statements made by the other driver nor moved to strike the testimony. *See* TEX. R. APP. P. 33.1(a)(1); *see also Dinkins*, 894 S.W.2d at 355 (stating that an objection should be made as soon as the ground for the objection becomes apparent, and if a question clearly calls for an objectionable response, the objection should be made before the witness responds); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (providing that if it was not possible to make a timely objection and the evidence is actually admitted, the defense must object as soon as the objectionable nature of the evidence became apparent and move to strike the evidence). Because we have found that Sander's objection was premature, we conclude that Sander has not preserved this issue for appeal.

### 2. Harmful Error Analysis

However, even if Sander had preserved this issue for appeal, any error in the admission of the testimony in question was harmless error. Rule 44.2(b) of the appellate rules mandates that we disregard any non-constitutional error unless it affects appellant's substantial rights. TEX. R. APP. P. 44.2(b). An error in the admission or exclusion of

---

[2] Arguably, Officer Casares's testimony regarding the statements made by the other driver may not constitute inadmissible hearsay evidence because the testimony explained how the defendant came to be a suspect. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) ("An extra[-]judicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay . . . . [W]e explained 'an extra-judicial statement or writing may be admitted as circumstantial evidence from which an inference may be drawn, and not for the truth of the matter stated, therein, without violating the hearsay rule. . . . We held that extra-judicial statements were not inadmissible hearsay because they were admitted not to prove the truth of the matter asserted, but rather to explain how the defendant came to be a suspect.") (quoting *Gholson v. State*, 542 S.W.2d 395, 398 (Tex. Crim. App. 1976)) (citations omitted) (emphasis in original); *see also Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.–Dallas 2000, no pet.).

evidence is subject to the harm analysis set forth in rule 44.2(b). *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Dorado v. State*, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). If other properly admitted evidence proves the same facts, the error is harmless. *See Matz v. State*, 21 S.W.3d 911, 912 (Tex. Crim. App. 2000); *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Additionally, "'we should not reverse a conviction for the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Cobb v. State*, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002) (quoting *Johnson*, 967 S.W.2d at 417).

The record reflects that Officer Casares identified Sander as the driver of one of the vehicles without objection and recalled that, when he arrived, he saw Sander was standing by his vehicle. In fact, the only people at the scene when Officer Casares arrived were Sander, the driver of the other car, and the other driver's husband. Furthermore, Officer Casares testified, over objection, that Sander admitted to him at the scene that he was the driver of one of the vehicles involved in the accident.[3] Because Officer Casares identified

---

[3] This testimony is not challenged on appeal. However, with respect to Sander's argument that the State failed to corroborate his extra-judicial confession at the accident scene that he was the driver of one of the vehicles involved, *see Coleman v. State*, 704 S.W.2d 511, 512 (Tex. App.–Houston [1st Dist.] 1986, pet. ref'd), we note that, based on his investigation, Officer Casares identified Sander as the driver without objection and that Sander was the only one near his vehicle. Texas courts have held that similar evidence was sufficient to corroborate a defendant's extra-judicial confession. *See Sandoval v. State*, 422 S.W.2d 458, 459 (Tex. Crim. App. 1967) (holding that defendant's statement at the accident scene was corroborated by evidence that the car was registered in his name and that no one else was present at the scene); *see also Reyes v. State*, No. 11-07-00367-CR, 2008 Tex. App. LEXIS 5944, at **2-6 (Tex. App.–Eastland Aug. 7, 2008, pet. ref'd) (mem. op., not designated for publication) (distinguishing *Coleman* and affirming a conviction for driving while intoxicated when the only evidence suggesting that the defendant had actually driven the vehicle was defendant standing by the vehicle and the fact that there were no other people in the area); *Youens v. State*, 988 S.W.2d 404, 408 (Tex. App.–Houston [1st Dist.] 1999, no pet.) (holding that the defendant's admission at the scene that he was driving his truck when the accident happened was sufficient evidence to

Sander as the driver of one of the vehicles involved in the accident without objection, the alleged error, if any, is harmless. *See Brooks*, 990 S.W.2d at 287; *Matz*, 21 S.W.3d at 912; *see also Cobb*, 85 S.W.3d at 272. We overrule Sander's first issue.

**B. The Admission of Sander's Blood Sample Into Evidence**

In his second issue, Sander contends that the trial court committed reversible error by admitting the results of a blood test taken at the Bay Area Hospital. Specifically, Sander asserts that: (1) the chain of custody was broken from the time his sample was taken and the time the crime laboratory received the sample on January 4, 2008; and (2) the label on the vial indicated that Sander's blood had been drawn approximately twenty-three hours before the accident had transpired. The State argues that the trial court did not err in admitting Sander's blood sample because the testimony at trial established the beginning and end of the chain of custody, and Sander failed to adduce evidence demonstrating that the sample was tampered with or altered.

**1. Chain of Custody**

In order for the results of a blood test to be admitted into evidence, a proper chain of custody of the blood sample that was drawn from the accused and later tested must be established. *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.–Houston [14th Dist.] 2001, no pet.); *Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.–San Antonio 2000, no pet.) (providing that a proper chain of custody must be established to admit the results of

---

establish that he was operating the vehicle). In any event, because we have concluded that Officer Casares's testimony pertaining to the other driver's identification of Sander as the driver was not timely objected to, this testimony, whether or not it was hearsay, was probative evidence of which to corroborate Sander's extra-judicial confession and was properly before the jury. *See* TEX. R. EVID. 802; *see also Poindexter v. State*, 153 S.W.3d 402, 409 (Tex. Crim. App. 2005) ("The trial judge has no duty to exclude [hearsay] on his own, and . . . [o]nce admitted without objection, such evidence enjoys a status equal to that of all other admissible evidence . . . . In particular[,] it has probative value and will support a judgment in favor of the party offering it.").

scientific testing). Proof that validates the beginning and the end of the chain of custody will support the admission of evidence, barring any evidence of tampering or alteration. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *disapproved on other grounds by Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998); *Hall v. State*, 13 S.W.3d 115, 120 (Tex. App.–Fort Worth 2000), *pet. dism'd as improvidently granted*, 46 S.W.3d 264 (Tex. Crim. App. 2001); *see also Benavidez v. State*, No. 13-97-526-CR, 1999 Tex. App. LEXIS 2833, at *8 (Tex. App.–Corpus Christi Apr. 15, 1999, no pet.) (mem. op., not designated for publication). Without evidence of tampering or commingling, gaps or theoretical breaches in the chain of custody go to the weight of the evidence, not its admissibility. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *Silva v. State*, 989 S.W.2d 64, 68 (Tex. App.–San Antonio 1998, pet. ref'd); *Alvarez v. State*, 857 S.W.2d 143, 147 (Tex. App.–Corpus Christi 1993, pet. ref'd). Additionally, a mere showing of the opportunity for tampering or commingling with another blood sample, absent affirmative evidence of such, is not sufficient to require exclusion of the evidence. *Darrow v. State*, 504 S.W.2d 416, 417 (Tex. Crim. App. 1974); *Dossett v. State*, 216 S.W.3d 7, 18 (Tex. App.–San Antonio 2006, pet. ref'd) ("In addition, the mere passage of time is no evidence of tampering.").

### 2. Discussion

In the instant case, Officer Vasquez testified that Sander consented to give a blood sample on the evening of the accident. After Sander was given various warnings and instructions regarding the collection of the blood sample, Schroepfer drew the blood and stored it in a vial. Once he finished collecting a sample of Sander's blood, Schroepfer labeled the vial with Sander's name and the following date: December 28, 2007, at 12:39

10

a.m.[4]  Schroepfer then gave law enforcement the vial for testing.  The TDPS Crime Lab received the vial of Sander's blood on January 4, 2008, and immediately placed the vial in a refrigerator.  Perez stated that he tested the blood sample on January 10, 2008, and determined that Sander had a blood alcohol concentration of 0.22 grams of alcohol per 100 milliliters of blood on the evening of the accident.  No evidence was presented suggesting that the sample had been tampered with or altered.  Sander's arguments pertaining to the fact that the chain of custody was broken from the time the sample was taken to when it was received by the TDPS Crime Lab speak to the weight to the given to the evidence, not its admissibility.  *See Lagrone*, 942 S.W.2d at 617; *Silva*, 989 S.W.2d at 68; *Alvarez*, 857 S.W.2d at 147.

Because the beginning and end of the chain of custody of the blood sample was established, and because no evidence of tampering or alteration was adduced, we conclude that the trial court did not abuse its discretion in admitting the results of the blood test.  *See Stoker*, 788 S.W.2d at 10; *Hall*, 13 S.W.3d at 120; *see also Benavidez*,1999 Tex. App. LEXIS 2833, at *8.  Accordingly, we overrule Sander's second issue.

### IV.  CONCLUSION

Having overruled both of Sander's issues on appeal, we affirm the judgment of the

---

[4] The testimony at trial established that Sander's blood was drawn about one hour after the accident occurred.  Therefore, Schroepfer's labeling of the vial was incorrect.  The label should have reflected that the blood was drawn on December 29, 2007, rather than December 28, 2007.  Regardless, this evidence goes to the weight to be afforded the evidence rather than admissibility and no evidence indicating that the vial had been tampered with or altered was presented.  *See Ochoa v. State*, 394 S.W.2d 172, 174 (Tex. Crim. App. 1965) ("[A] discrepancy as to the postmark on a container mailed to the Department of Public Safety did not render the chain of custody incomplete."); *Durrett v. State*, 36 S.W.3d 205, 211 (Tex. App.–Houston [14th Dist.] 2001, no pet.); *see also Benavidez v. State*, No. 13-97-526-CR, 1999 Tex. App. LEXIS 2833, at *8 (Tex. App.–Corpus Christi Apr. 15, 1999, no pet.) (mem. op., not designated for publication) ("The chain of custody is conclusively proven when the seizing officer testifies that:  (1) he seized the physical evidence; (2) he has identified his personal mark on the evidence; and (3) he placed into and retrieved the item of evidence from the property room.").

trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 23rd day of July, 2009.