**Opinion issued October 24, 2019**



In The

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-18-00239-CR

_____

**STEVEN SCHMIDT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1466347**

## O P I N I O N

A jury convicted appellant, Steven Schmidt, of continuous sexual assault of a child, and the trial court assessed punishment at 45 years' confinement. In five issues, appellant contends that the trial court abused its discretion by (1) allowing an

improper "outcry" witness to testify, (2) admitting testimony from an unqualified expert witness, (3) admitting business records from the expert witness that contained hearsay, (4) admitting extraneous offense evidence, and (5) that he was harmed by cumulative error. We affirm.

## BACKGROUND

The complainant in this case, C.S., lived in Houston with her brother, N.S., her mother, Nichole, and her father, appellant. The children were homeschooled, and appellant, who was unemployed after being discharged from the Air Force because of an injury, was supposed to supervise their schooling. Testimony revealed that appellant frequently slept till noon, drank heavily, and paid little attention to the children's education. There was also testimony that he was verbally and physically abusive to the children.

Appellant's relationship with Nichole was also volatile. In May 2011, when Nichole attempted to leave in her car after a fight, appellant jumped on the hood of the car. Nichole continued driving, and then braked suddenly, causing appellant to fall off the hood and sustain a traumatic brain injury. Thereafter, appellant was hospitalized for several months and then underwent several more months of rehabilitation.

When appellant returned from the hospital, the children were enrolled in private school. C.S. was in fourth grade at the time. At first, during his recovery,

2

appellant's relationship with his family improved, but eventually he became aggressive again.

After a particularly heated argument between appellant and Nichole, which took place in front of the children, Nichole took the children to a park to talk without appellant present. During their conversation, C.S. complained that she wanted the abuse to stop. At first, Nichole testified that C.S. told her that appellant touched her "down there" and pointed to her privates, but Nichole later clarified that this conversation actually took place later, not at the park. She clarified that, while at the park, she thought C.S. was talking about physical abuse and that she did not know about the sexual abuse until later. After the conversation with the children in the park, Nichole decided to leave appellant. She moved, with the children, to Alabama to live with her parents. Appellant then filed a petition for divorce on June 13, 2014.

That same summer of 2014, Nichole began taking C.S. to weekly therapy appointments at Glanton House, a therapy clinic at Auburn University. Nichole had been referred there by a domestic violence counselor at a women's shelter.

For approximately six months, C.S., met with Allison Mangone, a graduate student at Auburn University who was working towards a master's degree in marriage and family therapy. At the time of the therapy, Mangone was not licensed, but was working under the supervision of other counselors with doctorate degrees.

3

In her intake information, C.S. self-reported that she was suffering from anxiety and depression. She did not mention sexual abuse. However, at her second session with Mangone, C.S. disclosed that she had been sexually abused by appellant.

Mangone reported the abuse allegation to the Texas Department of Family and Protective Services. Several months later, the Houston Police Department contacted Mangone and requested that she ask C.S. for more information regarding the sexual abuse allegations.

On October 21, 2014, during her fifteenth therapy session, C.S. gave Mangone a detailed account of the sexual abuse. C.S. stated that appellant began sexually abusing her when she was about six years old and that it continued until she was eleven years old. The sexual abuse did not stop until appellant suffered the traumatic brain injury in 2011. C.S. stated that the first abuse she could remember was when appellant called her into another room, pulled down her underwear, rubbed her vagina, and inserted his finger. She also stated that appellant would make her rub his penis until he ejaculated and he would make her perform oral sex on him. C.S. stated that appellant would rub his penis near her vagina, but that he never penetrated her with his penis. C.S. thought that her mother might have known about the abuse to some extent, but she did not know how much her mother knew. She never told

4

her mother, but her mother did find her in the shower with her father on at least one occasion.

At appellant's trial, C.S., now 17 years old, testified to essentially the same evidence that she had disclosed to Mangone during therapy.

In 2015, appellant was indicted for continuous sexual abuse of a child, but, on July 17, 2017, his first trial ended in a hung jury. Upon retrial, he was convicted, assessed punishment of 45 years' imprisonment, and this appeal followed.

## OUTCRY-WITNESS DESIGNATION

In issue one, appellant contends that the trial court abused its discretion "by allowing Allison Mangone, an intern therapist, to testify as the outcry witness when the evidence indicated that she was not the first person, over eighteen years of age, to whom the child made an outcry as required by Texas Code of Criminal Procedure Article 38.072." Specifically, appellant contends that C.S. made an earlier outcry to her mother, thus her mother should have been designated as the outcry witness.

*Applicable Law*

Article 38.072 of the Code of Criminal Procedure provides a statutory exception that allows the State to introduce outcry statements, which would otherwise be considered hearsay, made by a child complainant of certain crimes. TEX. CODE CRIM. PROC. art. 38.072; *see also* TEX. R. EVID. 801(d) (defining hearsay), 802, 803. These offenses include continuous sexual abuse of a child. TEX.

5

CODE CRIM. PROC. art. 38.072; *see also* TEX. PENAL CODE § 21.02. Under article 38.072, the trial court may admit the statements of a child complainant describing the alleged offense through an "outcry witness." TEX. CODE CRIM. PROC. art. 38.072, § 2(a)(3). The outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child made a statement regarding the offense, extraneous crime, wrong, or act. *Id*. The statement must be "more than words which give a general allusion that something in the area of child abuse is going on." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)).

*Error Preservation*

As a preliminary matter, we determine whether appellant preserved his complaint for appellate review. To preserve a complaint for appellate review, the record must show that an objection was made to the trial court, that the grounds for relief were stated with enough specificity, and that the trial court ruled upon the objection. TEX. R. APP. P. 33.1(a). The issue must comport with the objection made at trial. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). In deciding whether an argument on appeal comports with the objection made at trial, an appellate court "consider[s] the context in which the complaint was made and the parties' shared understanding at the time." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

Appellant contends that he preserved error on this issue because he brought to the court's attention that the testimony of C.S.'s mother needed to be heard during the 38.072 Outcry Hearing to determine if Mangone was, in fact, the first adult over the age of 18 that C.S. told about the sexual abuse. Specifically, appellant's counsel stated:

> With respect to the outcry issue, Judge, maybe I mistakenly understood it, before you make your ruling I was under the impression that we would also, since the therapist is basing this sort of on speculation as to whether or not she was the first person who was 18 years of older, I thought we were going to call [C.S.'s mother] for that purpose, just to find out whether or not she was, in fact, the first person. So[,] I know you sort of made your ruling, but I would ask that we at least briefly call [C.S.'s mother] to ask her that limited [question] to find out if, in fact, she did know or didn't know.

Thereafter, the trial court permitted the State to call C.S.'s mother to testify about whether she knew about the sexual abuse before Mangone. After C.S.'s mother testified, the trial court stated, "My earlier ruling with respect to the outcry witness Allison Mangone still stands."

Appellant received all the relief he requested when he asked the trial court to consider C.S.'s mother's testimony, which the trial court did. Thereafter, appellant made no objection to the designation of Mangone as the outcry witness, and he did not argue that, based on the evidence presented by both Mangone and C.S.'s mother, that the mother was the proper outcry witness. Indeed, a second outcry hearing was held, at which defense counsel stated, "[At the earlier hearing], we narrowed it down

7

to, I think Allison Mangone being the outcry witness. I don't have any reason to believe that would change. So, I am not going to ask for another outcry hearing." Because appellant never objected to the trial court's ruling that Mangone was the proper outcry witness, he has failed to preserve error on this issue.

Accordingly, we overrule issue one.

## EXPERT-WITNESS QUALIFICATIONS

In issue two, appellant contends that the trial court erred by allowing Mangone to testify as an expert witness because "Mangone was not qualified or licensed to make a diagnosis or determine treatment." Specifically, appellant states that "[t]he issue presented concerning Mangone's lack of a professional license is whether she is disqualified [] from testifying as an expert concerning mental health and therapy."

*Standard of Review and Applicable Law*

The admissibility of evidence generally, and the qualifications of a witness to testify as an expert or as a lay witness, are within the discretion of the trial court. *See* TEX. R. EVID. 104(a); *Ventroy v. State*, 917 S.W.2d 419, 422 (Tex. App.—San Antonio 1996, pet. ref'd). A trial court's decision to permit a witness to testify as an expert or as lay witness (under Rule 701 of the Rules of Evidence) will not be disturbed on appeal absent a showing of an abuse of discretion. *Ventroy*, 917 S.W.2d at 422.

Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702. Because the spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness is qualified to testify as an expert in a case. *Rodgers v. State*, 205 S.W.3d 525, 527–28 (Tex. Crim. App. 2006). Appellate courts may consider the following criteria in assessing whether a trial court has clearly abused its discretion in ruling on an expert's qualifications: (1) the complexity of the field of expertise, (2) the conclusiveness of the expert's opinion, and (3) the centrality of the area of expertise to the resolution of the lawsuit. *Id.* at 528. When a trial court determines that a witness is or is not qualified to testify as an expert, appellate courts rarely disturb its determination. *Vela v. State*, 209 S.W.3d 128, 136 (Tex. Crim. App. 2006).

*Mangone's Testimony*

The State argued that it intended to offer Mangone "under [Rules of Evidence] 702 and 703 as an expert in the field of providing anxiety therapy as well as depression therapy and specifically to providing that treatment to [C.S.], her expert opinions on the cause of [C.S.'s] anxiety and the cause of her depression and what the best therapeutic goals were."

9

Mangone testified that she is a marriage and family therapist in Atlanta, Georgia, and she provided therapy to C.S. when she lived in Auburn, Alabama. C.S.'s family chose to obtain treatment at Glanton House because it was affordable.

Mangone has an undergraduate degree from Auburn University in human development and family studies and a master's degree in marriage and family therapy. As a part of her master's program, she was required to provide therapy and treatment for clients at Glanton House, a university clinic. The therapy sessions were supervised by professors with doctoral degrees. She provided therapy to C.S. as a part of this program. Her sessions with C.S. were usually observed by her doctorate supervisors, and her notes and treatment plans were reviewed by them.

After she graduated from the master's program, Mangone worked as a therapist performing in-home therapy with children in the juvenile justice system. She later joined a group practice, where she provided therapy under the supervision of a licensed professional counselor and two therapist supervisors. She has treated 300 to 500 clients, including at least 30 child victims of sexual abuse. Although not certified at the time of C.S.'s treatment, she was in the process of obtaining her certification as a therapist in the state of Georgia. Mangone was not able to legally diagnose any mental health conditions, but she could provide diagnostic impressions. Mangone testified, "I worked underneath my supervisors' licenses

10

since I was unlicensed at the time. And[,] so[,] everything that I did was on them. It was important for them to approve everything that I did as a therapist there."

After hearing her qualifications, the trial court ruled as follows:

I have now had the opportunity to listen to Miss Mangone's qualifications twice as well as all of the cross-examination on it. I think everybody is—seems to be caught up in expertise versus sub-specialization. And those are not the same. Whether she within the field of an expert then had developed some other subspecialty, is a separate matter.

The bottom line is I am satisfied that she does have sufficient background in the particular field of mental health and therapy, even at the time, because she was part of an accredited program and was being sufficiently supervised by licensed individuals. That's how these programs work and we have heard about that in some detail.

So, yes, I believe that she has sufficient background in that field to give opinions. And that is certainly the very matter on which she is being called to give an opinion.

* * * *

I think that we are doing a public disservice if we are going to somehow allow people to, in an accredited program, provide services to individuals, but then say: I am so sorry because you didn't have the funds to go to a Ph.D. or a private physician for 300-plus-an-hour, somehow now you are going to be dinged and, I am sorry, those opinions and diagnostic impressions are not going to be useful in these types of situations.

So, she is qualified. She gets to testify.

Thereafter, Mangone testified that she conducted weekly therapy sessions with C.S., under the supervision of a licensed therapist, for about six months during

11

the summer of 2014. Mangone recorded weekly progress notes from each session, which were introduced into evidence over appellant's objection.

When C.S. first sought help at Glanton House, she self-reported that she was experiencing depression, panic attacks, and anxiety. She did not report sexual abuse during her intake, but, during her second session, she made an outcry to Mangone alleging sexual abuse by her father, appellant.

Mangone made notes regarding her observations of C.S., including difficulty expressing emotions, suicidal thoughts, and hallucinations. Mangone made no conclusions regarding whether sexual abuse had, in fact, occurred. She testified that it was not her job to do so. If her client reported sexual abuse, her job was to accept that as true and to report it to officials if necessary, which she did in this case.

Mangone believed that C.S's depression, anxiety, and panic attacks could have been caused by the stress of moving and transitioning from homeschooling to public school and that C.S.'s lack of emotion was caused by trauma. Sexual abuse could be "just another piece" of the total trauma, and some of the hallucinations C.S. spoke to her about could have been "manifestations due to her sexual abuse."

*Error Preservation*

We begin by noting that appellant does not point to which parts of Mangone's testimony that he finds objectionable. As we have already stated, Mangone, as the outcry witness, provided testimony about C.S.'s statements to her about the offense.

Testimony from an outcry witness about the complainant's outcry is not expert testimony but is admissible hearsay testimony about the facts of the offense. To preserve error concerning a proffer of evidence containing both admissible and inadmissible material, the objection must specifically reference the inadmissible material. *See Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002); *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995) (failure to segregate between admissible and inadmissible evidence failed to preserve any error as to admission of all). If the complaint about admissibility fails to refer to the objectionable portions of the evidence, then the trial court may safely admit or exclude it all. *Willover*, 70 S.W.3d at 847. Because appellant complains, both at trial and on appeal, that *all* of Mangone's testimony is inadmissible expert testimony without any attempt to segregate between expert and non-expert testimony, the issue is waived.

*No Harm*

Even if we were to agree that Mangone was not qualified to offer expert opinion testimony in this case because she was unable, without a license, to diagnose depression, anxiety, panic attacks, or whether C.S. was a sexual abuse victim, we would nonetheless conclude that error, if any, was harmless because Mangone did none of those things. Mangone acknowledged that, as an unlicensed therapist, she was unable to diagnose a client. However, she did not claim to have diagnosed C.S. C.S. self-reported her depression, anxiety, panic attacks, and hallucinations. In

13

recording those self-reported symptoms, Mangone was acting as a lay witness, not an expert witness. *See* TEX. R. EVID. 701. Similarly, Mangone never claimed to diagnose C.S. as a sexual assault victim. Instead, she explicitly testified that her job was not to determine the truth of C.S.'s sexual abuse claims, but to accept them as true and report them to authorities as necessary.

In *Harnett v. State*, the trial court qualified a social worker to testify as an expert about the marriage counseling she had done for the defendant and the complainant. 38 S.W.3d 650, 656 (Tex. App.—Austin 2000, pet. ref'd). The defense had objected that the witness was not an expert because she was not a licensed professional counselor. *Id.* at 657. The court found no error in allowing the witness to testify because her "testimony was not of a scientific or technical nature, but her opinions or inferences were based on impressions and conclusions derived from perceptions of what she saw, heard, and observed during her eight sessions with appellant, and on her years of experience and training." *Id.* at 659.

The same is true here. Mangone's testimony was not scientific or technical, but was based on information that C.S. self-reported during therapy and Mangone's impressions and conclusions derived from that information provided by C.S. Mangone did not offer any opinion regarding whether C.S. had suffered sexual abuse; she merely accepted that self-reported information from C.S. as true. Thus, even if Mangone was improperly qualified as an expert witness because she lacked

the credentials to diagnose C.S., the error is harmless because Mangone did not offer expert opinion testimony on that issue.

Additionally, much of the same information offered by Mangone about her counseling sessions with C.S. was also admitted through C.S.'s own testimony. Specifically, C.S. also testified that in therapy she disclosed the sexual abuse, as well as her anxiety, depression, and hallucinations. C.S. acknowledged that some of the symptoms began when she moved and started a new school, but also that "it was more due to the post-traumatic—post—more of the shock of the past situations." Because the same evidence regarding C.S.'s therapy was admitted through C.S.'s own testimony without objection, no harm is shown. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (holding admission of inadmissible evidence harmless if substantially similar evidence admitted without objection); *see also Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (holding error in admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection).

Because error, if any, in allowing Mangone to testify as an expert was not preserved, and "substantially the same evidence" regarding C.S.'s therapy was admitted through C.S.'s own testimony thereby rendering any error in admitting Mangone's testimony harmless, we overrule issue two.

**HEARSAY**

15

In issue three, appellant contends "[t]he trial court abused its discretion by admitting hearsay evidence contained within the records of Allison Mangone[,] namely, testimony regarding Appellant's identity as the perpetrator."

At trial, the State offered Mangone's therapy records under the business records exception to the hearsay rule. *See* TEX. R. EVID. 803(6). Appellant objected, arguing that that the exception to the hearsay rule was not applicable because the records were unreliable.

> Well, our objection is that under the business records exception to hearsay, the very end, it says, If the opponent—which will be us—establishes that they are unreliable—and our argument is that they are unreliable because at the time she was a student, operating under the guise of some supervisors who did not write what's in the reports, that if the Court is recalling the testimony from the first trial—which I can say because the jury is out—much of what was written in there was paraphrased by Miss Mangone, not the actual words of the child.
>
> And, you know we're are going to rely back on our objection to the qualifications. And so we believe that we have rebutted the purpose of the hearsay exception, which is that they [be] reliable.

The trial court overruled appellant's objection, and Mangone's records from her therapy sessions with C.S. were admitted.

*Standard of Review*

A trial court has broad discretion in determining the admissibility of evidence. *See Coffin v. State,* 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). Thus, we will not reverse an evidentiary ruling unless the record shows a clear abuse of discretion. *Williams v. State,* 535 S.W.2d 637, 639–40 (Tex. Crim. App. 1976). An abuse of

16

discretion occurs when the trial court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Galliford v. State,* 101 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

*Error Preservation*

Appellant objected at trial that the therapy records were not reliable, and thus did not qualify under the business records exception to the hearsay rule. However, on appeal, appellant argues that the records contained "hearsay within hearsay," and that no valid hearsay exception was given for the individual "hearsay within hearsay" statements contained within the records. Appellant argues that, even if business records, the hearsay contained within the therapy records should have been excluded. Specifically, appellant points to (1) the statements made by C.S., (2) Mangone's summary of statements made by C.S., (3) the statements made by Mangone, (4) the statements made by Mangone's supervisor, and (5) the statements made by C.S.'s mother. Because appellant did not make a "hearsay within hearsay" objection at trial, his complaint on appeal does not comport with his complaint at trial and is waived. *Ponce v. State*, 89 S.W.3d 110, 120 n.8 (Tex. App.—Corpus Christi 2002, no pet.) (holding that, because "hearsay within hearsay" was not raised at trial, issue asserting such on appeal was waived); *Santschi v. State*, No. 14-15-00771-CR, 2017 WL 3090001, at *7 (Tex. App.—Houston [14th Dist.] July 20, 2017, no pet.) (mem. op., not designated for publication) (holding that hearsay

17

objection arguing that Rule 803(6) did not apply did not preserve error for a "hearsay within hearsay" objection).

Additionally, when, as here, an exhibit contains both admissible and inadmissible material, it is incumbent upon the objecting party to specifically identify the portion of the exhibit that is inadmissible or any error in its admission will not be preserved for review. *See Willover*, 70 S.W.3d at 847); *Sonnier*, 913 S.W.2d at 518  (failure to segregate between admissible and inadmissible evidence failed to preserve any error as to admission of all). If the complaint about admissibility fails to refer to the objectionable portions of the evidence, then the trial court may safely admit or exclude it all. *Willover*, 70 S.W.3d at 847.  Although appellant's reply brief now attempts to point to the specific portions of the records that he contends are objectionable, he never did so in the trial court.  Thus, the "hearsay within hearsay" issue is waived.

Accordingly, we overrule issue three.

**EXTRANEOUS OFFENSE**

In issue four, appellant contends that "[t]he trial court abused is discretion by first allowing improper evidence of an extraneous offense to be admitted at trial and then by failing to properly limit the jury's consideration of that evidence."

*Background*

18

Before trial, appellant filed a motion in limine to prevent the State from referencing any extraneous offenses without first approaching the bench for an evidentiary ruling. At a pretrial hearing, the State argued that evidence regarding appellant's physical abuse of N.S., C.S.'s brother, should be admitted to show that C.S. was afraid of appellant, and, for that reason, she did not make an outcry regarding sexual abuse until she moved out of his home. Appellant responded that the extraneous offense evidence was not admissible under Rules 402[1] or 403 of the Texas Rules of Evidence or under article 38.37 of the Texas Code of Criminal Procedure, which, under certain circumstances, permits extraneous offense evidence in sexual offenses against children. After hearing arguments from both sides on the issue, the trial court deferred a ruling, stating, "And I think if and when we get there, then there is a timely objection to be made and we can revisit that issue with the understanding that some of this is going to be coming in again, just as it did in the first trial."

During opening statements, defense counsel stated that N.S. would testify that he was physically abused by appellant. N.S. testified that appellant's verbal abuse of the children "slipped into physical abuse" "on multiple occasions." When asked

---

[1] Presumably, appellant intended to refer to Texas Rule of Evidence 404(b), which prohibits evidence of "crimes, wrongs, or other acts" to show character conformity, but allows their admission for other limited purposes.

19

about an incident when his father hit him with a cane, the following exchange took

place:

Q: Do you ever remember C.P.S. being called out—Child Protective Services—before the 2011 time, for something that your dad had done?

A: No.

Q: Was there ever a time—during any of those times was there any proof, do you have any long-standing injuries from any of those times?

A: Well, there is this scar I have on my forehead (indicating).

Q: And how did you get that scar?

A: My father hit me over the head with a cane.

Q: Why did he have a cane?

A: Well, I remember he yelled at me for something I didn't do or something, I can't remember what. And he told me to go to my room. And so I bolted over there. I guess I didn't hear him right or something like that.

And he, like, when—when I came back earlier he told me that he—he called me and said that he was chasing after me, but then he tripped and fell on his knee or something, which he injured. And so when I was called later on to talk with him he was sitting on a chair.

Q: And what kid of reaction did he have sitting on the chair?

A: He was very angry.

Q: Were the rest of the family in the house?

A: I didn't see my sister around. I am not sure why. I know it was just me, my mom, and him.

20

[Defense Counsel]: Judge, I am going to object to any further testimony—said his sister wasn't there—under 403, 38.37, 404(b).

After a short bench conference, the prosecutor moved on to other testimony and N.S. did not revisit the issue of physical abuse by his father. However, C.S. and her mother both testified, without objection, about the cane incident against N.S. and appellant's violent nature.

*Error Preservation*

The State argues that appellant has failed to preserve error. We agree. Here, the State asked N.S. how he got his scar, and N.S. responded that his father hit him with a cane, followed by a discussion of why appellant had a cane and who was present, before appellant ever objected. Appellant's objection was thus too late to be effective. "[T]he failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). "A complaint is timely if it is made 'as soon as the ground of objection becomes apparent.'" *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (quoting *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991)). "If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008).

21

Additionally, before an appellant will be permitted to complain on appeal about an erroneous jury argument, the appellant must show that he objected and pursued the objection to an adverse ruling. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Absent an adverse ruling by the trial court, which appears in the record, there is no preservation of error; there must be a definite ruling on the record. *Evans v. State,* 622 S.W.2d 866, 871 (Tex. Cr. App. 1981); *Stoner v. State,* 585 S.W.2d 750, 755 (Tex. Cr. App. 1979); *Hanner v. State,* 572 S.W.2d 702, 707 (Tex. Cr. App. 1978). Here, there is no adverse ruling on the record. After a short bench conference, the prosecutor agreed to move on to other issues, and the trial court never ruled on the admissibility of the evidence. Thus, error is not preserved.

*No Harm*

Even if we found the error preserved, we would nonetheless find it harmless. Error in admission of evidence is non-constitutional and will be disregarded unless "the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *see* TEX. R. APP. P. 44.2(b). If we, as the reviewing court, have "fair assurance that the error did not influence the jury, or had but a slight effect," we will not reverse the trial court's ruling. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Here, both C.S. and her mother also testified about appellant's violence toward N.S., particularly mentioning the incident with the cane. Because the same evidence regarding appellant's violence against N.S. was admitted through the testimony of C.S. and her mother, without objection, no harm is shown. *See Coble*, 330 S.W.3d at 282 (holding admission of inadmissible evidence harmless if substantially similar evidence admitted without objection); *see also Mayes*, 816 S.W.2d at 88 (holding error in admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection).

Accordingly, we overrule issue four.

## CUMULATIVE ERROR

In issue five, appellant contends that "[t]he cumulative effect of the trial court's successive abuses of discretion resulted in a denial of due process and denied Appellant the right to a fair trial."

"The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though no single instance of error would." *Holloway v. State*, No. 05-14-01244-CR, 2016 WL 3098297, at *4 (Tex. App.—Dallas May 25, 2016, no pet.) (mem. op., not designated

for publication); *see also Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect."). In a cumulative-error analysis, we consider only errors that were preserved for appeal. *Taylor v. State*, No. 05-14-00821-CR, 2016 WL 7439194, at *9 (Tex. App.—Dallas Dec. 27, 2016, pet. ref'd) (mem. op., not designated for publication). The cumulative-error doctrine does not apply unless the complained-of errors have been preserved for appeal and are actually errors. *See Chamberlain*, 998 S.W.2d at 238 ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."). If an appellant fails to prove any error as to his complaints separately, there is no cumulative harm. *Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016).

Here, all of appellant's complaints were either (1) not error or (2) not preserved. As such, there is no cumulative error.

We overrule issue five.

## CONCLUSION

We affirm the trial court's judgment

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Kelly.

Publish. TEX. R. APP. P. 47.2(b)