Raul ALVAREZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–003–CR.

Court of Appeals of Texas,
Corpus Christi.

June 30, 1993.

Discretionary Review Refused
Oct. 20, 1993.

Desiderio Trevino, Jr., David Garcia, Law Offices of David Garcia, Edinburg, for appellant.

Theodore C. Hake, Cynthia A. Morales, Asst. Crim. Dist. Attys., Rene Guerra, Dist. and County Atty., Edinburg, for the State.

Before NYE, C.J., and GILBERTO HINOJOSA and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

A jury found appellant guilty of possessing less than twenty-eight grams of cocaine, and the trial court assessed punishment at ten years' probation, plus a $750 fine. By three points of error, he challenges the method used to obtain a body-tissue sample, the chain of custody, and the sufficiency of the evidence to support his conviction. We affirm.

The facts at the pretrial suppression hearing showed that in the early morning hours of January 19, 1991, Officer Segundo saw a vehicle run off of the road as it was coming onto Feeder Road. He chased the vehicle which was paced at 80 miles-per-hour. The vehicle stopped at a Coastal Mart, and Segundo asked appellant, the vehicle's driver, to exit the vehicle. Appellant slowly opened the door and swayed as he walked towards Segundo. Segundo asked him for his driver's license, and appellant fumbled through his wallet and gave it to him. He informed Segundo that he had been drinking. Segundo detected a strong odor of alcohol on his breath and saw him sway as he was standing and that he had wide eyes. At the scene, Segundo asked appellant to perform three field-so-briety tests. Segundo testified that appellant failed the tests, and he determined that appellant was intoxicated. Minutes later, Sergeant Pacheco arrived and found out from Segundo that appellant was intoxicated. Pacheco advised appellant that he was under arrest for DWI and that he would have to go to the Weslaco Police Station for a breath test.

■ At the station, Segundo saw a white substance under appellant's left nostril and informed Pacheco.[1] Pacheco saw it and asked appellant what it was. Appellant replied that it was Noxema. Pacheco asked him whether he had been snorting coke, and he replied that he had not. Pacheco gave appellant some tissue paper and asked him to wipe his nose. Appellant blew his nose and wiped it. He was going to throw the tissue away, but Pacheco took the tissue.

The trial court overruled the motion to suppress the evidence seized from appellant's nose. During trial of the case-in-chief, Raul Guajardo, the State's chemist, testified that the tissue contained .47 milligrams of cocaine. The alleged cocaine was admitted into evidence.

By point one, appellant complains that the method used to obtain his body-tissue sample (mucous excretion) was not reasonable because it was seized without notice. He argues that the sample was seized in violation of his right to be secure from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution. His contention is that the State should have been required to obtain a search warrant in order to have seized the alleged cocaine from his nose.

■ The Fourth Amendment's purpose is to keep the government from arbitrarily invading a person's privacy and security.

---

1. During trial of the case-in-chief, Pacheco testified that Segundo asked him to look at appellant's nose because he had something in it that looked like cocaine. No objection was lodged against this testimony. In reviewing the validity of a warrantless search, the appellate court considers the evidence developed at the pretrial suppression hearing and the evidence developed in greater detail at trial. *McDole v. State,* 579 S.W.2d 7, 8 (Tex.Crim.App.1979); *Saenz v. State,* 670 S.W.2d 667, 671 n. 3 (Tex.App.—Corpus Christi 1984, pet. ref'd); *see also Webb v. State,* 760 S.W.2d 263, 272 n. 13 (Tex.Crim.App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989); *Hardesty v. State,* 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App.1984).

*Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). The same is true for Article 1, Section 9 of the Texas Constitution. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex.Crim. App.1988). Searches conducted outside the judicial process, without a judge's or magistrate's prior approval, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Juarez,* 758 S.W.2d at 775.

▌ One exception to the warrant requirement is the search incident to a custodial arrest. *See United States v. Edwards,* 415 U.S. 800, 802–03, 94 S.Ct. 1234, 1236–37, 39 L.Ed.2d 771 (1974). The Supreme Court has explained this exception as follows:

> It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973).

▌ Texas law generally follows federal law concerning searches incident to a lawful arrest. *Rogers v. State,* 774 S.W.2d 247, 264 (Tex.Crim.App.1989), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989); *Carrasco v. State,* 712 S.W.2d 120, 122 (Tex.Crim.App.1986). In *Rogers,* the Court stated:

> Both under the Fourth Amendment to the United States Constitution and under Art. 1, Section 9 of the Texas Constitution, searches of a person and the area within his immediate control are excepted from the requirement of a warrant when incident to the lawful arrest of

such person and otherwise proper in scope. . . .

*Rogers,* 774 S.W.2d at 264. Searches incident to arrest are not limited as a matter of law to those made at the instant a suspect is taken into police custody. *Abel v. United States,* 362 U.S. 217, 239, 80 S.Ct. 683, 697, 4 L.Ed.2d 668 (1960); *Rogers,* 774 S.W.2d at 264. Rather, the legal basis for concluding that these searches are reasonable within the meaning of the state and federal constitutions is ordinarily applicable during the entire interval following arrest and leading ultimately either to detention of the suspect or to his release on bail pending formal accusation and trial. *Edwards,* 415 U.S. at 802–03, 94 S.Ct. at 1236–37; *Rogers,* 774 S.W.2d at 264.

▌ In this case, the white substance under appellant's nostril was visible to Segundo and Pacheco. Appellant was asked to blow his nose, and after doing so, Pacheco took the tissue. This search was made subsequent to an arrest, the legality of which is not challenged, while appellant was still in custody of the arresting officers, and it was therefore subject to usual notions of search incident to a lawful arrest and detention. Further, appellant blew his nose without protest, and we find that the State's request for him to do so was reasonable in light of the exigent circumstances. Had appellant sneezed or wiped his nose, the chance to obtain the evidence would have vanished. The search was a minor intrusion upon the body, if one at all. We hold that the trial court did not err in finding the search to be reasonable and in refusing to suppress the evidence seized. *See Patterson v. State,* 598 S.W.2d 265, 268–70 (Tex.Crim.App.1980).[2]

By point two, appellant attacks the chain of custody of the tissue specimen taken from him. He argues that the tissue (Exhibit 1E) should not have been admitted into evidence because no legal proof exist-

---

2. In *Patterson,* hair samples taken from appellant's head, sideburns, and chest were introduced into evidence and compared with hair found at the crime scene. The accused argued on appeal that the admission of this evidence taken without his consent violated his right to

be free from unreasonable searches and seizures under the Fourth Amendment and Article 1, Section 9. The Court found that the taking of hair samples involved a minor intrusion upon the body, if one at all, and that the seizure was not unreasonable.

ed to show that it was the same tissue taken from him at the police station. The evidence showed that on January 19, when appellant was at the station following his arrest, Trooper Long gave Pacheco some tissue, and Pacheco gave it to appellant. After appellant blew his nose in it, Pacheco took the tissue, folded it, and put it in his pocket. Pacheco went home and hung his uniform inside of his closet. Pacheco testified that his wife had access to his closet, but that to his knowledge, she did not go into the pocket. He stated that he did not have any narcotics in that pocket and that he did not put any narcotics in the pocket before or after he put the tissue in it. He also testified that Exhibit 1E looked like the tissue which was used to obtain the sample from appellant and that it was in substantially the same shape as it was when he put it in his pocket. On January 22nd, he gave the tissue to Trooper Barrera.

Barrera testified that on January 22nd, he received the tissue from Pacheco and put it into his empty pocket. That day, he gave it to Raul Guajardo, the State's chemist. Barrera did not put any narcotics in the pocket before he put the tissue in it. He recognized Exhibit 1E as the tissue which Pacheco gave him. He also testified that Exhibit 1E was in the same condition as when he received it from Pacheco.

Guajardo testified that he received Exhibit 1E from Barrera on January 22nd and that he put it into a sealed envelope (Exhibit 1). He stated that no one had access to the envelope's contents and that it had been stored in the Department of Public Safety laboratory vault. At trial, he broke the envelope's seal and removed another sealed envelope (Exhibit 1A) which contained the tissue (Exhibit 1E). His analysis showed that Exhibit 1E contained .47 milligrams of cocaine.

The State offered Exhibit 1E into evidence. Defense counsel objected that the State had not established the chain of custody and that it had not laid the proper predicate. Specifically, he argued that the State could not have established a proper chain of custody until January 22, 1991,

three days after Pacheco allegedly received the tissue from appellant. The trial court admitted the exhibit into evidence.

■■■ A chain of custody is conclusively proven if an officer is able to identify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room, and then retrieved the item being offered on the day of trial. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Elliot v. State*, 450 S.W.2d 863, 864 (Tex. Crim.App.1970). If a substance is properly identified, most questions concerning care and custody go to the weight given the evidence and not to its admissibility, absent a showing that the substance was tampered with or changed. *See Medellin v. State*, 617 S.W.2d 229, 232 (Tex.Crim.App. 1981); *Montgomery v. State*, 506 S.W.2d 623, 624 (Tex.Crim.App.1974); *Walker v. State*, 470 S.W.2d 669, 672–73 (Tex.Crim. App.1971). When the State shows the beginning and the end of the chain of custody, any gaps in between go to weight rather than admissibility, particularly when the chain goes inside the laboratory. *Medellin*, 617 S.W.2d at 232.

■■■ In the present case, Exhibit 1E passed from appellant to Pacheco and then to Barrera. Though neither Pacheco nor Barrera put an identification mark on the exhibit, Pacheco testified that it looked like the tissue which was used to get the sample from appellant. Barrera recognized the exhibit as the tissue which Pacheco gave him. Guajardo's testimony showed that he received the exhibit from Barrera and that he kept it in a sealed envelope, except for the times he weighed and analyzed it. No evidence showed that the exhibit was tampered with or changed. We hold that the trial court did not err when it admitted Exhibit 1E into evidence.

■■■ By point three, appellant attacks the sufficiency of the evidence to prove, by evidence other than mere possession, that he knew the substance on his nose was a controlled substance. He argues that the trial court erred when it overruled his Motion for Instructed Verdict because the State did not prove that he knowingly and

intentionally possessed the cocaine.[3] In reviewing the sufficiency of the evidence, we must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989). We must take each case and review all the evidence to determine whether the State has proven beyond a reasonable doubt every element of the alleged crime and not just a plausible explanation of the crime. *Butler*, 769 S.W.2d at 239.

To prove a defendant guilty of unlawfully possessing a controlled substance, the State must show that the defendant intentionally or knowingly exercised actual care, custody, control, or management over a controlled substance, *Humason v. State*, 728 S.W.2d 363, 365 (Tex. Crim.App.1987), and that the accused knew that the matter he possessed was contraband, *Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Crim.App.1983); *Acosta v. State*, 752 S.W.2d 706, 707 (Tex.App.—Corpus Christi 1988, pet. ref'd). In other words, there must be some independent facts and circumstances which affirmatively link the accused to the contraband so that we can conclude that he had knowledge of the contraband as well as management or control over it. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Villarreal v. State*, 703 S.W.2d 301, 305 (Tex. App.—Corpus Christi 1985, no pet.).

To obtain a conviction in this case, the application paragraph required the State to prove that appellant intentionally or knowingly possessed cocaine in an amount by aggregate weight, including any adulterants or dilutants, of less than 28 grams. During trial of the case-in-chief, Segundo testified that while at the station, he saw a white, powdery substance under appellant's left nostril on the outside and that he advised Pacheco.

Pacheco testified that he saw a white, powdery-type substance mixed with mucous on the inside bottom part of appellant's left nostril. Appellant informed him that the substance was Noxema, but Pacheco had never seen Noxema in powder form. He stated that a person snorts cocaine through the nose and that appellant's pupils were dilated. According to Pacheco, pupil dilation could mean that a person was under the influence of drugs.

In this case, the substance under appellant's left nostril was in plain view and visible to Segundo and Pacheco. Appellant's eyes were dilated which could have meant that he was under the influence of drugs. Cocaine is taken into the body through the nose. The State's chemist testified that the tissue (Exhibit 1E) contained .47 milligrams of cocaine. Texas courts have stated that when a drug is quantitatively measurable and seen without a microscope, the evidence is enough to support a conviction. *Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Crim.App.1983) (3 milligrams); *Kent v. State*, 562 S.W.2d 855, 856–57 (Tex.Crim.App.1978) (3.2 milligrams); *Chavez v. State*, 768 S.W.2d 366, 367–68 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd) (.5 milligrams); *Alejandro v. State*, 725 S.W.2d 510, 515 (Tex.App.— Houston [1st Dist.] 1987, no pet.) (.3 milligrams). The State met its burden of establishing an affirmative link between appellant and the cocaine.

After reviewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found that appellant knowingly or intentionally possessed the cocaine.

We AFFIRM the trial court's judgment.

NYE, C.J., not participating.

---

**3.** In *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991), the Court stated that a challenge to the trial court's ruling on a motion for instructed verdict is actually a challenge to the sufficiency of the evidence to support the conviction. In reviewing the sufficiency of the evidence, we must consider all the evidence, both State and defense, in the light most favorable to the verdict. If the evidence is sufficient to sustain the conviction, then the trial court did not err in overruling appellant's motion.