ACCEPTED
12-15-00206-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
8/20/2015 5:40:38 PM
CATHY LUSK
CLERK

No._____

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
8/20/2015 5:40:38 PM
CATHY S. LUSK
Clerk

In the

## Twelfth Court of Appeals

## In re Wendell Reeder

## Petition for Writ of Mandamus

**Marisa M. Schouten**
Bar I.D. No. 24039163
**John F. (Jack) Walker, III**
Bar I.D. No. 00785167
**Martin Walker, P.C.**
The Arcadia Theater
121 N. Spring Street
Tyler, Texas 75702
(903) 526-1600 Telephone
(903) 595-0796 Telefax

**Attorney for Relator,
Wendell Reeder**

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as names and addresses of all counsel:

**PARTIES**                                    **COUNSEL**

Relator:                                       For Relator:

Wendell Reeder                                 **Appellate Counsel**
                                               Marisa Schouten
                                               State Bar No. 24039163
                                               Martin Walker P.C.
                                               The Arcadia Theater
                                               121 N. Spring Street
                                               Tyler, Texas 75702
                                               (903) 526-1600 Telephone
                                               (903) 595-0796 Telefax
                                               Mschouten@martinwalkerlaw.com

                                               **Trial Counsel**
                                               John F. (Jack) Walker, III
                                               State Bar No. 00785167
                                               Martin Walker P.C.
                                               The Arcadia Theater
                                               121 N. Spring Street
                                               Tyler, Texas 75702
                                               (903) 526-1600 Telephone
                                               (903) 595-0796 Telefax
                                               Jwalker@martinwalkerlaw.com

Real Parties in Interest:

J Bennett White, PC

For Real Parties in Interest:

J. Bennett White, pro se
State Bar No. 21309800
J. Bennett White, P.C.
P.O. Box 6250
Tyler, Texas 75711
(903) 597-4300 Telephone
(903) 597-4330 Telefax
jbw@jbwlawfirm.com

Respondent:
Honorable Timothy Boswell
Judge, 402nd Judicial District
Wood County, Texas
P.O. Box 1707
Quitman, Texas 75783-1707
Tel.: (903) 763-2332

For Respondent:
N/A

**TABLE OF CONTENTS**

The Parties and Their Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

List of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

I.      The Requested Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.     Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.    Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.     Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

        1.      Did the Court abuse its discretion by disqualifying the entire law firm
                of Mayo, Mendolia and Vice from representing Relator on the basis
                of employment of a former paralegal to White, where the paralegal
                was Chinese Walled-off from the case at issue?

                If so, is Reeder's remedy by appeal inadequate?

V.      Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

        A. Procedural posture.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

        B. As to the motion to disqualify. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

        C. Facts regarding the paralegal's rehiring and the Chinese Wall. . . . . . . .  6

VI.     Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

VII.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

VIII.   Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

A. White's argument that the paralegal had "confidential information subjecting her to competing loyalties in honoring client confidences" is specious. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    1. Disqualification is a severe remedy, and courts are to exercise it with restraint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    2. When the client at issue has also switched firms to the new firm, is the same confidentiality concern present? Effectively, the client has consented to the employment of the paralegal. . . . . . . . . . . . . . . . . 13

    3. The person betraying client confidences is White. When an attorney sues his client, the privileges at issue are waived as between the parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    4. The presumption did not arise because the matters embraced in the former lawsuits are not substantially related to the factual matters involved in the pending lawsuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    5. A paralegal, as a nonlawyer, presents less danger of client confidence violations, and the restriction of nonlawyer employment should be held to the "minimum necessary." The Chinese Wall satisfies all diligence requirements. . . . . . . . . . . . . . . . . . . . . . . . . . 17

B. The Supreme Court has condemned the tactic of "lawyer as witness" disqualification. It should be even more so condemned where a paralegal is at issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    1. Analysis of Rule 3.08(a) reveals that it's inapplicable. . . . . . . . . 20

    2. Analysis of Rule 3.08(b) reveals that it's inapplicable. . . . . . . . . 23

C. No adequate appellate remedy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IX.   Conclusion and Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

X.    Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XI.    Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**APPENDIX**

A.    Court's Order Granting Motion to Disqualify J. Keith Mayo and Mayo
      Mendolia & Vice, L.L.P. as Attorneys for Defendant Wendell Reeder, dated
      July 14, 2015.

B.    Tex. R. Prof. Conduct 3.08

# AUTHORITIES

## Cases:

*Ginsberg v. Fifth Court of Appeals*,
686 S.W.2d 105 (Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Hewlett Packard*,
212 S.W.3d 356, 360 (Tex. App.—Austin 2006, orig. proceeding). . . . . . . . . . . . 8

*In re Bell Helicopter Textron, Inc.*,
87 S.W.3d 139 (Tex. App.—Fort Worth 2002, orig. proceeding) . . . . . . . . . . 11, 15

*In re Martel*,
2007 Tex. App. LEXIS 70 (Tex. App.—Tyler 2007, orig. proceeding)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12, 20, 22, 23, 24

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Sanders*,
153 S.W.3d 54 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 19, 21, 24

*Phoenix Founders, Inc. v. Marshall*,
887 S.W.2d 831 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16, 17

*Scrivner v. Hobson*,
857 S.W.2d 148 (Tex. App.—Houston [1ˢᵗ Dist.] 1993, no writ) . . . . . . . . . . . . . 14

**Rules, Statutes & Other Authorities:**

TEX. CONST. art. 5, §6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TEX. GOV'T CODE § 22.221 (Vernon 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TEX. R. EVID. 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. DISCIP. RULE OF PROF. CONDUCT 3.08 . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23

No. _____

IN THE COURT OF APPEALS
FOR THE TWELFTH JUDICIAL DISTRICT OF TEXAS
TYLER, TEXAS

IN RE WENDELL REEDER, Relator

From the 402nd Judicial District of
Wood County, Texas

**RELATOR'S PETITION FOR WRIT OF MANDAMUS**

TO THE HONORABLE COURT OF APPEALS:

Bennett White, attorney, has sued Wendell Reeder, a former client, for breach of contract and seeks approximately $200,000 in contested, unpaid attorney fees. Reeder wants to be represented by the counsel of his choice against these serious allegations.

But the trial court won't let him.

This original proceeding contests an order disqualifying the entire law firm of Mayo Mendolia & Vice because a former paralegal for White now works for Mayo Mendolia & Vice.

1

# I. THE REQUESTED RELIEF

Reeder seeks a writ of mandamus directing the trial court to vacate its July 14, 2015 order disqualifying Keith Mayo and the entire firm of Mayo Mendolia & Vice, L.L.P. as attorneys for Reeder.

# II. STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case* | This appeal arises out of a breach of contract action filed by White, attorney, against Reeder, former client, for approximately $200,000 in contested, unpaid attorney fees. |
| *Respondent* | The Honorable Timothy Boswell, presiding judge of the 402nd District Court of Wood County, Texas. |
| *Trial Court's Disposition* | On July 14, 2015, the District Court disqualified the entire lawfirm of Mayo Mendolia & Vice from representing Relator. Relator files this petition for writ of mandamus to vacate the Court's order. |

## III. STATEMENT OF JURISDICTION

This court has jurisdiction to issue a writ of mandamus under Texas Constitution article 5, § 6, Section 22.221 of the Texas Government Code.

## IV. ISSUES PRESENTED

1.    Did the Court abuse its discretion by disqualifying the entire law firm of Mayo, Mendolia and Vice from representing Relator on the basis of employment of a former paralegal to White, where the paralegal was Chinese Walled-off from the case at issue?

   If so, is Reeder's remedy by appeal inadequate?

## V. STATEMENT OF FACTS

### A. Procedural posture.

On April 14, 2015, White, attorney, filed a pro se petition in Wood County District Court for breach of contract against former client, Reeder. CR 1:3. The petition seeks in excess of $212,000 in unpaid attorney fees in seven cases,[1] and an additional $70,000 in attorney fees for prosecuting the instant matter. CR 1:3. To be clear, White no longer represents Reeder in any action. White is suing Reeder. CR 1:3.

The petition did not attach an affidavit, was not sworn under oath, and did not attach any statements showing description of legal services provided, time spent or amount owed. CR 1:3.

On June 1, 2015, Reeder appeared through Mayo, Mendolia and Vice, his counsel of record, and filed an original answer and general denial. CR 1:10.

Ten days later, White filed a page and a half motion to disqualify the entire firm of Mayo, Mendolia and Vice. CR 1:13. White did not cite a single case, law or cannon, and did not attach a single piece of evidence. CR 1:13.

On the heels of the motion to disqualify, White filed a traditional motion for summary judgment as to the entire cause of action, now seeking an award of the

---

[1]Reeder contests the attorney fees.

attorney fees in excess of $212,000 as though a suit on sworn account had been filed, seeking to avail himself of suit on sworn account's procedural hammer. CR 1:17.

The court held a hearing on White's motion to disqualify and subsequently issued an order disqualifying the entire law firm of Mayo, Mendolia and Vice. CR 1:2.[2]

Meanwhile, a traditional summary judgment that's dispositive of the entire case is pending, and set for hearing on August 25, 2015. CR 1:98.

**B. As to the motion to disqualify.**

In his motion to disqualify, White contended that Jennifer Smith, a current paralegal at Mayo Mendolia and Vice, can disqualify the entire law firm by her presence alone on two bases: (1) she was privy to privileged and confidential information, subjecting "her to competing loyalties in honoring the client confidences gained while working at" White's law firm, and (2) she is a witness with first-hand knowledge as to the correctness of White's billing practices including that some portion of the fees owed are for services performed by Smith. CR 1:13.

---

[2] For the Court's convenience, the reporter's record, a transcript of the hearing on motion to disqualify, is attached as the last item within the mandamus record.

**C. Facts Regarding the Paralegal's Re-hiring and the Chinese Wall.**

Mayo Mendolia and Vice, and White are adversaries in many cases, not just the case at hand. CR 1:91.

Smith, the paralegal, worked for Mayo Mendolia and Starr from 2008 to March 2012. CR 1:91-92.

Smith then left employment at Mayo Mendolia and Starr, and was employed at White's office for a period of time. CR 1:91-92.

Mayo Mendolia and Vice then re-hired Smith two days after Reeder became a client. CR 1:91-92.

Before she was re-hired, her segregation from all files that, at some point, involved the White office, had already been contemplated, and a Chinese Wall was put in place. CR 1:91-92.

Specifically, at the time Smith was re-hired, all cases in which the two firms were adversarial ("White files") were located and quarantined. CR 1:91-92. Mayo instructed Smith and all firm personnel that Smith was to field no calls associated with the files, was not to access these files via the firm server or by viewing the hard files, and was not to discuss the files, even in casual conversation, with any firm employee or partner. CR 1:91-92. All White files were assigned to another

legal assistant in the office and the hard files were placed in a segregated office from Smith. CR 1:91-92.

Smith has remained completely isolated from any of the White files. CR 1:91-92.

## VI. SUMMARY OF ARGUMENT

The trial court erred when it disqualified an entire law firm because it hired a former paralegal to White. Also, there is no adequate remedy by appeal for Reeder.

Disqualification is a severe remedy, and courts are to exercise it with restraint.

When an attorney sues his former client, it presents particularly unique facts: White and Reeder are no longer aligned and the fabric of confidentiality is wrecked because the attorney now uses those confidences to pursue the former client. The confidentiality concern that traditionally underlies the disqualification analysis no longer exists.

Here, White failed to establish that disqualification is justified. No presumption arises because this is a new, separate suit, in which White is suing his former client, Reeder.

Second, the risk of confidentiality being violated does not exist. Reeder, the client at issue, is now represented by Mayo, Mendolia and Vice, and is therefore on the "same side" as Smith. If anything, he has consented.

Further, Smith was Chinese-Walled off from the case at hand.

Finally, Smith, as a witness, could not trigger disqualification under Rule 3.08 because she is not a lawyer, her testimony is not necessary to establish an essential fact, there is no actual prejudice, and the anticipated testimony relates to attorney fees, an area that is specifically excepted from Rule 3.08.

## VII. STANDARD OF REVIEW

Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and when there is no adequate remedy by appeal. *In re Hewlett Packard*, 212 S.W.3d 356, 360 (Tex. App.—Austin 2006, orig. proceeding).

The trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it fails to correctly analyze or apply the law. *In re Martel*, 2007 Tex. App. LEXIS 70, *3 (Tex. App.—Tyler 2007, orig. proceeding).

The grant or denial of a motion to disqualify counsel is a proper subject for mandamus review because there is no adequate remedy by appeal. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004); *Martel*, 2007 Tex. App. LEXIS 70 at *3.

Reeder shall prove that the Court erroneously granted the motion to disqualify.

## VIII. ARGUMENT AND AUTHORITIES

The court abused its discretion when it granted White's motion to disqualify and ordered the entire law firm of Mayo Mendolia and Vice disqualified.

White sought disqualification of the entire law firm of Mayo Mendolia and Vice based on its employment of his former paralegal for two reasons: (1) she was privy to privileged and confidential information, subjecting "her to competing loyalties in honoring the client confidences gained while working at" White's law firm, and (2) she is a witness with first-hand knowledge as to the correctness of White's billing practices including that some portion of the fees owed are for services performed by Smith. But disqualification is not justified by the rule or the policy that underlies it.

White's page and a half motion is bereft of any citation to case law, rule, cannon, or statute. The motion is also bereft of any evidence at all. It should have been denied.

**A. White's argument that the paralegal had "confidential information subjecting her to competing loyalties in honoring client confidences" is specious.**

White's argument fails because Reeder's confidences are safe as they can be in a suit where an attorney is suing his former client.

Generally, when counsel undertakes representation of an interest that's adverse to that of a former client, the lawyer is disqualified from representing the new client if the matters embraced in the former lawsuit are substantially related to the factual matters involved in the pending lawsuit. *In re Bell Helicopter Textron, Inc.*, 87 S.W.3d 139, 145 (Tex. App.—Fort Worth 2002, orig. proceeding). This is based upon the presumption that confidences were imparted to the attorney during the prior representation, and the purpose of the presumption is to prevent the party seeking disqualification from being forced to reveal the very confidences sought to be protected. *Id.*

But, when the presumption never arises in the first place, and when the paralegal has been Chinese-Walled as an added precaution, disqualification is inappropriate.

**1. Disqualification is a severe remedy, and courts are to exercise it with restraint.**

The Supreme Court has said that "disqualification is a severe remedy." *Sanders*, 153 S.W.3d at 57. Disqualification is a measure that can cause immediate harm by depriving a party of its chosen counsel and disrupting court proceedings. *Id*.; *Martel*, 2007 Tex. App. LEXIS 70 at \*4 (disqualification of counsel can cause "immediate and palpable harm"). Thus, movant bears the burden of establishing that disqualification is justified, and "mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice to merit disqualification." *Id*.

As the Tyler Court of Appeals explained in *Martel*, "[I]n ruling on a motion to disqualify, the trial court must adhere to an exacting standard to discourage use of disqualification as a dilatory trial tactic." 2007 Tex. App. LEXIS 70 at \*4.

Here, White provided no evidence at all. White's page and a half motion did not rise above mere allegations. It does not even clearly set forth why Mayo Mendolia and Vice should have been disqualified. Because White failed to satisfy his burden, his motion should have been denied.

**2. When the client at issue has also switched firms to the new firm, is the same confidentiality concern present? Effectively, the client has consented to the employment of the paralegal.**

This is not an "adverse client" situation that would give rise to a presumption. *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831 (Tex. 1994). Rather, the client chose to be represented by the lawfirm where the paralegal now works, and so the client and the paralegal are on the same side. Thus, no confidences could be betrayed.

The presumption's purpose is to prevent the moving party from being forced to reveal the very confidences sought to be protected. *Id*. at 834. This presumption is particularly applicable to circumstances in which the employee at issue switches sides (and thus clients) within the same adversarial proceeding. *Id*. at 834-35.

Further, the presumption may also be defeated when the client consents. *Id*. at 835.

No presumption should exist because Reeder chose to be represented by Mayo, moving his business from the White lawfirm to the Mayo, Mendolia and Vice lawfirm. Further, Reeder chose Mayo, and continues to desire to employ Mayo, thus effectively consenting to Smith's presence at Mayo's firm. Because both the client, and the paralegal at issue, have switched sides, concerns of betrayal of confidences simply do not exist.

Thus the policy underlying the issue does not support disqualification in this case.

**3. The person betraying client confidences is White. When an attorney sues his client, the privileges at issue are waived as between the parties.**

White can't have his cake and hide it, too.

White chose to sue his client, and in so doing, now claims that there are privileges to be protected and that Reeder's confidences may be betrayed by a paralegal, requiring disqualification of an entire lawfirm. This argument overlooks the fact that White is suing the man whose privileges he claims to want to protect.

If the rule operated the way White proposes, then White himself would be conflicted out of his own cause of action—Reeder could seek to disqualify White from representing himself pro se—White possesses Reeder's confidences, and will use them, and will testify adversely and his testimony is necessary to establish an essential fact–the breach of contract, the scope of work to be performed, and the reasonableness and necessity of attorney fees that White seeks to collect.

TRE 503(d)(3) states that where breach of duty by a lawyer or client is at issue, there is no privilege for communications relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer. *Scrivner v. Hobson*, 857

S.W.2d 148 (Tex. App.—Houston [1ˢᵗ Dist.] 1993, no writ); TEX. R. EVID. 503(d)(3).

It's well known that "A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence..." *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex. 1985). Such offensive use of privileges is prohibited.

**4. The presumption did not arise because the matters embraced in the former lawsuits are not substantially related to the factual matters involved in the pending lawsuit.**

White failed to bring forward evidence that this is a situation giving rise to a presumption. White must establish that Smith actually worked on the case at issue in order to have a conclusive presumption that confidences and secrets were imparted to her. *Phoenix*, 887 S.W.2d at 834. The rebuttable presumption only arises if the matters in the litigation are "substantially related." *Bell Helicopter*, 87 S.W.3d at 145. The presumption's purpose is to prevent the party seeking disqualification from being forced to reveal "the very confidences" sought to be protected. *Id*.

Even so, a paralegal is never conclusively presumed to share confidential information with members of the new firm.[3] *Phoenix*, 887 S.W.2d at 834.

Smith was a paralegal employed by White, who performed some tasks in the underlying disputes. However, Smith did not perform any tasks related to Cause No. 2015-184, *White v. Reeder* (this pending suit).

The pending lawsuit is a breach of attorney-client contract, and White seeks to recover attorney fees. It is only related to the underlying disputes in that he believes he is owed fees for his representation in those disputes. He no longer represents Reeder.

Because White failed to carry his burden and establish that the matters being litigated are "substantially related," no presumption was raised.

---

[3]"We disagree, however, with the argument that paralegals should be conclusively presumed to share confidential information with members of their firms. . . . Absent consent of the former employer's client, disqualification will always be required under some circumstances, such as (1) when information relating to the representation of an adverse client *has in fact been disclosed*, or (2) when screening would be ineffective or the nonlawyer *necessarily would be required to work on the other side* of a matter that is the same as or substantially related to a matter on which the nonlawyer has previously worked. See ABA Op. 1526 at 3. Ordinarily, however, disqualification is not required as long as 'the *practical effect* of formal screening has been achieved.'" *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 834-35 (Tex. 1994).

**5. A paralegal, as a nonlawyer, presents less danger of client confidence violations, and the restriction of nonlawyer employment should be held to the "minimum necessary." The Chinese Wall satisfies all diligence requirements.**

The Supreme Court has determined that the rules do not require disqualification of the new law firm as long as a Chinese Wall is in place, and the paralegal does not reveal any information relating to the former employer's clients to any person in the employing firm— "Ordinarily. . . disqualification is not required as long as 'the *practical effect* of formal screening has been achieved.'" *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d at 834-835.

Here, Smith was a prior employee of Mayo, Mendolia and Vice for many years. Her reputation is top-notch, and the Tyler legal community greatly prizes its gifted and dedicated legal staff.

As explained by the Supreme Court, the concern underlying all of this is employment mobility for paralegals and nonlawyers. "A potential employer might well be reluctant to hire a particular nonlawyer if doing so would automatically disqualify the entire firm from ongoing litigation." *Id*. Recognizing this danger, "any restrictions on the nonlawyer's employment should be held to the minimum necessary to protect confidentiality of client information." *Id*.

Mayo Mendolia and Vice were pleased to re-hire Smith. The re-hire happened two days after Reeder became a client. CR 1:91-92. Automatic

17

disqualification of an entire lawfirm should not occur just because Smith worked for White while Reeder was White's client.

Before she was re-hired by Mayo Mendolia and Vice, her segregation from all files that, at some point, involved the White office, had already been contemplated, and a Chinese Wall was put in place. CR 1:91-92.

The Supreme Court set forward the elements for the nonlawyer's Chinese Wall as follows:

> [T]he newly hired paralegal should be cautioned not to disclose any information relating to the representation of a client of the former employer. The paralegal should also be instructed not to work on any matter on which the paralegal worked during the prior employment, or regarding which the paralegal has information relating to the former employer's representation. Additionally, the firm should take other reasonable steps to ensure that the paralegal does no work in connection with matters on which the paralegal worked during the prior employment, absent client consent and after consultation.
>
> Each of these precautions would tend to reduce the danger that the paralegal might share confidential information with members of the new firm. Thus, while a court must ordinarily presume that some sharing will take place, the challenged firm may rebut this presumption by showing that sufficient precautions have been taken to guard against any disclosure of confidences.

*Id*. at 835.

Each of these elements was satisfied by Mayo, Mendolia and Vice. At the time Smith was re-hired, all White files were located and quarantined. CR 1:91-92.

Mayo instructed Smith and all firm personnel that Smith was to field no calls associated with the files, was not to access these files via the firm server or by viewing the hard files, and was not to discuss the files, even in casual conversation, with any firm employee or partner. CR 1:91-92. All White files were assigned to another legal assistant in the office and the hard files were placed in a segregated office from Smith. CR 1:91-92.

Smith has remained completely isolated from any of the White files. CR 1:91-92. These steps meet the Chinese Wall requirements, and easily satisfy the "minimum necessary" standard for nonlawyers. The presumption, if any, was easily rebutted here.

Accordingly, the trial clearly court abused its discretion.

**B. The Supreme Court has condemned the tactic of "lawyer as witness" disqualification. It should be even more so condemned where a paralegal is at issue.**

White's second asserted ground, that the former paralegal is a witness with first-hand knowledge as to the correctness of White's billing practices including that some portion of the fees owed are for services performed by Smith, is specious.

"The fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification." *Sanders*, 153 S.W.3d at 57. "We have stated that

19

Rule 3.08 should not be used tactically to deprive the opposing party of the right to be represented by the lawyer of his or her choice." *Id*. at 58.

When deciding disqualification issues, Texas courts look to the Disciplinary Rules of Professional Conduct as guidelines that suggest relevant considerations, but they do not determine whether a counsel is disqualified. *Martel*, 2007 Tex. App. LEXIS 70 at *4. Two potential provisions–Rule 3.08(a) and (b)–address "lawyer as witness" disqualification. *Id*. at 6-7; TEX. DISCIP. RULE OF PROF. CONDUCT 3.08(a) and (b).

Counsel for Reeder has found no case applying Rule 3.08 to paralegals. White did not present the court with any authority that Rule 3.08 applies to paralegals. Nonetheless, the issue is addressed below.

**1. Analysis of Rule 3.08(a) reveals that it's inapplicable.**

Rule 3.08 subsection (a) "prohibits a lawyer from continuing employment as an advocate in a pending adjudicatory proceeding if the lawyer knows or believes that the *lawyer* is or may be a witness necessary to establish an *essential fact* on behalf of the lawyer's client..." *Id*. at 6. However, Rule 3.08(a) states that witnesses on the following issues are excepted from this rule: "(3) the testimony relates to the nature and value of legal services rendered in the case... or (4) the lawyer is a party to the action and is appearing pro se[.]"

20

The Supreme Court has said that a party requesting disqualification must demonstrate that the opposing lawyer's dual roles as attorney and witness will cause the party actual prejudice. *Sanders*, 153 at 57. The Supreme Court has condemned the tactic because the rule could be "improperly employed as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice." *Id*., quoting TEX. DISCIP. R. PROF'L CONDUCT 3.08 cmt. 10.

Here, White has failed in four ways–(1) Smith is a nonlawyer employee and thus the provision is inapplicable, (2) White has failed to establish that Smith's potential testimony is necessary to establish an essential fact, (3) White has failed to establish actual prejudice to himself resulting from her service as a paralegal and a witness, and (4) the anticipated testimony relates to legal fees, in a case in which a lawyer is appearing pro se, which are issues specifically excepted from the rule.

Smith is not a lawyer, and therefore, does not fall within the strict letter of the rule. Because Smith is a nonlawyer employee, the restriction should be applied to the minimum extent necessary, if at all. As explained above, nonlegal employees must be allowed mobility and the limits placed on nonlawyer employees must be carefully applied. Further, the rule itself excludes testimony relating to the nature and value of legal services rendered in the case, and circumstances in which the lawyer is a party to the action and is appearing pro se.

21

Smith's testimony is not "necessary" to establish an "essential fact" of White's case. *Martel*, 2007 Tex. App. LEXIS 70 at *6. White alleges that Smith has first-hand knowledge of the correctness of White's claim against Reeder, and Smith performed "some" of the services for which White is owed fees. But White does not identify any *essential fact* that must be established on White's behalf for which Smith's testimony is *necessary*. To the contrary, White is the attorney, who has the first-hand knowledge to establish the attorney-client contact, the scope of work to be performed, and whether the time spent, and fees charged were reasonable and necessary. Smith would not be able, or qualified, to establish those essential facts. White hasn't brought forward a single shred of information that would establish otherwise.

White also has failed to show that he is prejudiced. In fact, the trial court could have concluded that White expects to benefit from Smith's testimony. *Id*. at *6, and n. 1.

Because White failed to establish that the rule applies to Smith, or that Smith is necessary to establish an essential fact, and because White cannot show prejudice, White has failed to carry his burden.

Disqualification of an entire lawfirm is not justified.

**2. Analysis of Rule 3.08(b) reveals that it's inapplicable.**

Rule 3.08(b) prohibits a lawyer from continuing as an advocate in a pending adjudicatory proceeding if the lawyer believes the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure. Martel, 2007 Tex. App. LEXIS 70 at *6-7; TEX. R. PROF. CONDUCT 3.08(b). Here, the lawyer's client is Reeder. Reeder is the person whose consent is at issue. White has brought forward no evidence that Reeder did not consent to Mayo Mendolia and Vice's continued representation. In fact, Reeder's continued desire to employ May Mendolia and Vice establishes exactly the opposite.

If the rule operated the way White proposes, then White himself would be conflicted out of his own cause of action, because Reeder could seek to disqualify White from representing himself because White possesses Reeder's confidences, and will use them, and will testify adversely and his testimony is necessary to establish an essential fact–the reasonableness and necessity of attorney fees that White seeks to collect.

Such a result is nonsensical, and reveals the dangers of misapplication.

## C. No Adequate Remedy by Appeal.

Reeder has established that he has no adequate remedy by appeal as a matter of law because the trial court granted a motion to disqualify counsel. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004). Reeder has a right to a counsel of his choice, and the trial court has taken that right away from him.

The Supreme Court and the Tyler Court of Appeals have held that grant or denial of a motion to disqualify counsel is a proper subject for mandamus review precisely because there is no adequate remedy by appeal. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004); *Martel*, 2007 Tex. App. LEXIS 70 at *3.

Accordingly, mandamus relief is appropriate in this case.

## IX. CONCLUSION AND PRAYER

For the foregoing reasons, Relator asks this Court to grant writ of mandamus directing the Honorable Timothy Boswell to vacate the order of July 14, 2015, enter an order denying the motion to disqualify, and grant such other and further relief to which Reeder may be justly entitled.

24

Respectfully submitted,



121 N. Spring Avenue
The Arcadia Theater
Tyler, Texas 75702
(903) 526-1600 Telephone
(903) 595-0796 Telefax
mschouten@martinwalkerlaw.com


By:     ___/s/ Marisa Schouten_____
          Marisa M. Schouten
          Bar I.D. No. 24039163

ATTORNEYS FOR RELATOR

25

## Certificate of Compliance and Conference

Counsel for the real party in interest was notified on August 20, 2015 by telephone that a petition for mandamus is being filed. Counsel stated that he is opposed to Petition for Mandamus.

I certify that this petition contains about 4,163 words according to the word count function of the computer program used in drafting the petition.

__/s/ Marisa Schouten_____
Marisa Schouten

## Certificate of Service

On the 20th day of August 2015, I forwarded, via the indicated method, a copy of this Petition for Writ of Mandamus to all parties.

____/s/ Marisa Schouten_____
Marisa Schouten

STATE OF TEXAS §

COUNTY OF SMITH §

BEFORE ME, the undersigned notary public, on this day personally appeared Marisa Schouten, who being duly sworn by me on her oath deposed and said that she is one of the attorneys for relator in the above entitled and numbered cause; that she has read the above and foregoing petition for writ of mandamus; and that every factual statement contained therein is within her personal knowledge and is true and correct.



_____
Marisa Schouten

SUBSCRIBED AND SWORN TO BEFORE ME on this 20th day of August, 2015, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas

BARBARA GORMAN
MY COMMISSION EXPIRES
August 2, 2019

No. _____

IN THE COURT OF APPEALS
FOR THE TWELFTH JUDICIAL DISTRICT OF TEXAS
TYLER, TEXAS

IN RE WENDELL REEDER, Relator

From the 402nd Judicial District of
Wood County, Texas

**Affidavit**

STATE OF TEXAS          §

COUNTY OF SMITH          §

BEFORE ME, the undersigned notary public, on this day personally appeared

Marisa Schouten, who being duly sworn by me on her oath deposed and said:

(1) She is one of the attorneys for relator in the above entitled and numbered cause

and in the underlying cause (no. 2015-184 in the District Court of Wood County,

Texas);

(2) She has personal knowledge of all documents prepared, issued, filed and/or

served in the underlying cause;

(3) she has reviewed the appendix to relator's mandamus petition and

(4) all documents contained in the appendix are true and correct copies of

documents prepared, issued, filed, and/or served in the underlying cause.



Marisa Schouten

SUBSCRIBED AND SWORN TO BEFORE ME on this 20th day of
August, 2015, to certify which witness my hand and official seal.

Barbara Gorman

BARBARA GORMAN
MY COMMISSION EXPIRES
August 2, 2019

Notary Public in and for the
State of Texas

APPENDIX A
Court's Order Granting Motion to
Disqualify J. Keith Mayo and Mayo
Mendolia & Vice as Attorneys for
Defendant Wendell Reeder, dated
July 14, 2015

CAUSE NO. 2015-184

| J. BENNETT WHITE, P.C. | § | IN THE 402nd DISTRICT COURT |
| | § | |
| VS. | § | IN AND FOR |
| | § | |
| WENDELL REEDER | § | WOOD COUNTY, TEXAS |

## ORDER GRANTING MOTION TO DISQUALIFY J. KEITH MAYO AND MAYO MENDOLIA & VICE, L.L.P. AS ATTORNEYS FOR DEFENDANT WENDELL REEDER

On June 23, 2015, came to be considered Plaintiff's Motion to Disqualify J. Keith Mayo and Mayo Mendolia & Vice, L.L.P. as Attorneys for Defendant Wendell Reeder. Plaintiff appeared through counsel of record, J. Bennett White. Defendant appeared through counsel of record, J. Keith Mayo.

The Court, having considered the pleadings on file and the evidence and argument presented, is of the opinion that a conflict exists sufficient to disqualify J. Keith Mayo and Mayo Mendolia & Vice, L.L.P. as attorneys for Defendant Wendell Reeder. Therefore, the Court finds that Plaintiff's motion should be Granted.

IT IS THE ORDER OF THE COURT that J. Keith Mayo and Mayo Mendolia & Vice, L.L.P shall have until **July 23, 2015** to withdrawal from this matter as attorneys for Defendant. Should J. Keith Mayo and Mayo Mendolia & Vice, L.L.P fail to withdrawal by **July 23, 2015** then this order shall deem them disqualified as of that date.

SIGNED THIS DAY _July 14_, 2015.

_____
JUDGE PRESIDING

# APPENDIX B
# Tex. R. Prof. Conduct 3.08

Texas Rules
Copyright (c) 2015 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.
*** This document is current through June 26, 2015 ***
STATE RULES
TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT
III. ADVOCATE
Tex. R. Prof Conduct 3.08 (2015)

**Rule 3.08 Lawyer As Witness**

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.

(c) Without the client's informed consent, a lawyer may not act as advocate in an adjudicatory proceeding in which another lawyer in the lawyer's firm is prohibited by paragraphs (a) or (b) from serving as advocate. If the lawyer to be called as a witness could not also serve as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in the presentation of the matter.

NOTES:

Comment:

1. A lawyer who is considering accepting or continuing employment in a contemplated or pending adjudicatory proceeding in which that lawyer knows or believes that he or she may be a necessary witness is obligated by this Rule to consider the possible consequences of those dual roles for both the lawyer's own client and for opposing parties.

2. One important variable in this context is the anticipated tenor of the lawyer's testimony. If that testimony will be substantially adverse to the client, paragraphs (b) and (c) provide the governing standard. In other situations, paragraphs (a) and (c) control.

3. A lawyer who is considering both representing a client in an adjudicatory proceeding and serving as a witness in that proceeding may possess information pertinent to the representation that would be substantially adverse to the client were it to be disclosed. A lawyer who believes that he or she will be compelled to furnish testimony concerning such matters should not continue to act as an advocate for his or her client except with the client's informed consent, because of the substantial likelihood that such adverse testimony would damage the lawyer's ability to represent the client effectively.

4. In all other circumstances, the principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact. Normally those dual roles are unlikely to create exceptional difficulties when the lawyer's testimony is limited to the areas set out in sub-paragraphs (a)(1)-(4) of this Rule. If, however, the lawyer's testimony concerns a controversial or contested matter, combining the roles of advocate and witness can unfairly prejudice the opposing party. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

5. Paragraph (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Paragraph (a)(2) recognizes that similar considerations apply if a lawyer's testimony relates solely to a matter of formality and there is no reason to believe that substantial opposing evidence will be offered. In each of those situations requiring the involvement of another lawyer would be a costly procedure that would serve no significant countervailing purpose.

6. Sub-paragraph (a)(3) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has firsthand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony. Sub-paragraph (a)(4) makes it clear that this Rule is not intended to affect a lawyer's right to self representation.

7. Apart from these four exceptions, sub-paragraph (a)(5) recognizes an additional exception based upon a balancing of the interests of the client and those of the opposing party. In implementing this exception, it is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. For example, sub-paragraph (a)(5) requires that a lawyer relying on that sub-paragraph as a basis for serving as both an advocate and a witness for a party give timely notification of that fact to opposing counsel. That requirement serves two purposes. First, it prevents the testifying lawyer from creating a substantial hardship, where none once existed, by virtue of a lengthy representation of the client in the matter at hand. Second, it puts opposing parties on notice of the situation, thus enabling them to make any desired response at the earliest opportunity.

8. This rule does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal. To minimize the possibility of unfair prejudice to an opposing party, however, the Rule prohibits any testifying lawyer who could not serve as an advocate from taking an active role before the tribunal in the presentation of the matter. See paragraph (c). Even in those situations, however, another lawyer in the testifying lawyer's firm may act as an advocate, provided the client's informed consent is obtained.

9. Rule 3.08 sets out a disciplinary standard and is not well suited to use as a standard for procedural disqualification. As a disciplinary rule it serves two principal purposes. The first is to insure that a client's case is not compromised by being represented by a lawyer who could be a more effective witness for the client by not also serving as an advocate. See paragraph (a). The second is to insure that a client is not burdened by counsel who may have to offer testimony that is substantially adverse to the client's cause. See paragraph (b).

10. This Rule may furnish some guidance in those procedural disqualification disputes where the party seeking disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles. However, it should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice. For example, a lawyer should not seek to disqualify an opposing lawyer under this Rule merely because the opposing lawyer's dual roles may involve an improper conflict of interest with respect to the opposing lawyer's client, for that is a matter to be resolved between lawyer and client or in a subsequent disciplinary proceeding. Likewise, a lawyer should not seek to disqualify an opposing lawyer by unnecessarily calling that lawyer as a witness. Such unintended applications of this Rule, if allowed, would subvert its true purpose by converting it into a mere tactical weapon in litigation.